**KNIGHT LAW GROUP LLP**
Steve Mikhov (SBN 224676)
stevemusfc@knightlaw.com
Daniel Kalinowski (SBN 305087)
10250 Constellation Blvd, Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
WAYNE W. YETTER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE W. YETTER,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:19-cv-00877-LHK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**FRCP RULE 12(c)**<br><br>Date:      July 18, 2019<br>Time:      1:30 p.m.<br>Courtroom:   8, 4th Floor<br>Judge:      Lucy H. Koh |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT.............................................................................................................. 2

  A.  Limiting the Analysis to the Pleadings, Defendant's Statute of Limitations
      Arguments Must Be Rejected ................................................................................ 3

    1.  The Discovery Rule Applies to Toll Plaintiff's Fraud Claims ................... 3

    2.  The Discovery Rule Applies to Toll Plaintiff's Song-Beverly Act Claims 5

    3.  The Doctrine of Fraudulent Concealment Applies to Toll Plaintiff's
        Claims ....................................................................................................... 8

  B.  Plaintiff Has Sufficiently Pled All of His Fraud Claims with the Requisite Factual
      Specificity ........................................................................................................... 10

    1.  Plaintiff Has Sufficiently Pled His Misrepresentation Claims ................. 10

    2.  Plaintiff Has Sufficiently Pled His Fraudulent Concealment Claim ........ 14

  C.  The Economic Loss Rule Does Not Apply........................................................... 19

III. IF THE MOTION IS GRANTED THE COURT SHOULD GRANT PLAINTIFF
     LEAVE TO AMEND THE COMPLAINT ................................................................ 21

IV.  CONCLUSION........................................................................................................... 22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS

## **TABLE OF AUTHORITIES**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733 (9th Cir. 2008) ............................................... 2

*April Enterprises, Inc. v. KTTV* , 147 Cal. App. 3d 805 (1983) ..................................................... 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 2

*Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006) ..................................................... 5

*Avalon Painting Co. v. Alert Lumber Co.*, 234 Cal. App. 2d 178 (1965) ..................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 2

*Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir. 1982) ............................................... 2

*Boschma v. Home Loan Center, Inc*., 198 Cal. App. 4th 230 (2011) ........................................... 14

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*,
   169 Cal. App. 4th 116 (2008) ...................................................................................................... 5

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ............................................................ 7

*Daniel v. Ford Motor Co*., No. 2:11-02890 WBS EFB,
   2016 WL 2899026 (E.D. Cal. May 18, 2016) .......................................................................... 17

*Daniel v. Ford*, 806 F.3d 1217 (9th Cir. 2015) ........................................................................... 15

*Daugherty v. American Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) .................................................................................................... 18

*Davis v. Monte*, 81 Cal. App. 164 (1927) .................................................................................... 10

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ................................................. 21

*Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908 (2010) .................................... 5, 7

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997) ......................................... 10

*Erlich v. Menezes*, 21 Cal. 4th 543 (1999) ................................................................................... 19

*Falco v. Nissan North America, Inc.*, No. CV 13–00686 DDP (MANx),
   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ............................................................................ 7

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................... 17

*Fox v. Ethicon-Endo Surgery, Inc.*, 35 Cal. 4th 797 (2005) ......................................................... 3

*Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069 (1998) ........................................................... 10

iii

*Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) ........................................... 2

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*

  896 F.2d 1542 (9th Cir. 1989) .................................................................................................. 2

*Harris v. Atlantic Richfield*, 14 Cal. App. 4th 70 (1993) ................................................................ 19

*Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883 (2007) ...................................... 3

*In re Marriage of Cornejo*, 13 Cal. 4th 381 (1996) ........................................................................ 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*

  *& Prods. Liab. Litig*., 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................. 17

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) ............................................................................ 3

*Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220 (1991) .......... 19

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,

  6 Cal. App. 4th 603 (1992) ...................................................................................................... 8

*McAdams v. Monier*, 182 Cal. App. 4th 175 (2010) ...................................................................... 11

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009) ...................................................... 5, 6, 7

*Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal. 4th 985 (1998) ...................................................... 5

*Paduano v. American Honda Motor Co.*, 169 Cal. App. 4th 1453 (2009) ...................................... 13

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ................................... 20, 21

*Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634 (1996) ...................................................... 17, 18

*Rutledge v. Hewlett-Packard Company*, 238 Cal. App. 4th 1164 (2015) ...................................... 10

*Sime v. Malouf* , 95 Cal. App. 2d 82 (1949) ................................................................................ 3, 4

*Starr v. Baca*, 652 F.3d 1202 (2011) ............................................................................................. 2

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................... 14, 18

*Tarmann v. State Farm Mutual Auto-Mobile Ins. Co.*,

  2 Cal. App. 4th 153 (1991) ...................................................................................................... 12

*Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App 4th 1559 (1996) ...................................................... 10, 11

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .................................................................. 2

*Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256 (1964) ................................................................ 15

*Warner Construction Corp. v. City of Los Angeles*, 2 Cal. 3d 285 (1970) .................................... 18

iv

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS

*West v. Great Western Power Co. of California*, 36 Cal. App. 2d 403 (1940)............................... 3

**Statutes**

Cal. Civ. Code § 1791.1(a) ........................................................................................................ 5

Cal. Civ. Code § 1791.1(c) ........................................................................................................ 6

Cal. Com. Code § 2725(2) ......................................................................................................... 5

**Other Authorities**

CACI No. 1900 ....................................................................................................................... 10

CACI No. 1901 ....................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(c) ................................................................................................................. 2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

This case is about a defective 2008 Ford Super Duty F-350 SRW truck, Ford's numerous failed attempts to fix it, and Ford's fraudulent conduct to conceal the defects. On June 30, 2008, Plaintiff Wayne W. Yetter ("Plaintiff") purchased a new 2008 Ford Super Duty F-350 SRW truck ("**Subject Vehicle**") from a Ford Motor Company ("**Ford**" or "**Defendant**") authorized dealership. Compl. ¶ 9. The Subject Vehicle was equipped with a 6.4-liter diesel engine ("**6.4L Engine**") manufactured by Navistar. Compl. ¶ 5. What Plaintiff did not know was that the 6.4L Engine had irreparable problems that Ford concealed at the time of sale and that Ford had been aware of those problems as early as 2007. Compl. ¶¶ 26–51, 69–77, 110–19. Despite Ford's awareness that the 6.4L Engine had significant quality, design, manufacture, and reliability issues, Defendant continued to represent, through its marketing materials and authorized dealers, that its Super Duty trucks equipped with the 6.4L Engine were of high quality. Compl. ¶¶ 40–51. That is the essence of fraudulent concealment.

During the five-year engine warranty, Plaintiff repeatedly brought the Subject Vehicle in to Ford's authorized repair facilities for repairs to the 6.4L Engine, with complaints of illuminated check engine warning lights, wrench warning light, cooling system leaks, reduced engine power, and noise coming from the torque converter. Compl. ¶¶ 59–68. What Plaintiff did not know, but Ford did, was that the truck had irreparable problems, and Ford continued to conceal this information from Plaintiff. Compl. ¶¶ 29–51, 69–77, 110–19.

Defendant now seeks judgment on all causes of action contained in Plaintiff's Complaint, arguing that Plaintiff's claims are barred by the relevant statutes of limitation. *See* Mot. 2:19–5:5, 6:9–7:19, 11:15–13:22. Defendant also argues that Plaintiff's fraud claims are insufficient and not pled with the requisite specificity, and that the economic loss rule bars Plaintiff's fraud claims. *See* Mot. 5:6–6:8, 7:20–11:14, 13:23–15:17. The Court should deny Defendant's Motion for Judgment on the Pleadings ("**Ford's Motion**"). Plaintiff has sufficiently pled facts to put Defendant on notice of his claims and their basis, and Plaintiff has shown that the delayed discovery rule and the doctrine of fraudulent concealment apply to toll Plaintiff's claims.

1

## II.    ARGUMENT

The standard applied on Rule 12(c) motions is essentially the same as applied on Rule 12(b)(6) motions: A court must accept all of the nonmoving party's factual allegations as true and construe them in the light most favorable to the nonmoving party. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008). While a court need not accept the truth of allegations that are merely "labels and conclusions," "formulaic recitations," or "naked assertions," legal conclusions supported by factual allegations "can provide the framework of a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a Rule 12(c) or Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009). Applying the principles set forth in *Twombly* and *Iqbal*, the Ninth Circuit has recognized that, under Rule 8(a), a well-pleaded complaint must contain sufficient allegations "to give fair notice and enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (2011) (noting that non-specific allegations may, in some cases, be sufficient to meet this standard).

Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). In ruling on the motion, a court may not go beyond the pleadings, but can consider items attached to the pleadings, documents sufficiently incorporated by reference, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); *cf. Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982) (discussing Fed. R. Civ. P. 12(b)(6)), *cert. denied,* 467 U.S. 1251 (1984); s*ee also Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

Here, there are several facts that remain in dispute, which are highlighted by Ford's Motion. Contrary to Ford's contentions, Plaintiff has sufficiently pled all of his claims, and when taken as true, the material facts and reasonable inferences support Plaintiff's causes of action for violations of the Song-Beverly Act, for fraudulent inducement via theories of concealment and misrepresentation.

**A.    Limiting the Analysis to the Pleadings, Defendant's Statute of Limitations Arguments Must Be Rejected**

**1.    The Discovery Rule Applies to Toll Plaintiff's Fraud Claims**

Plaintiff alleges that the discovery rule applies to toll Plaintiff's claims. The discovery rule provides that a statute of limitations should not begin to run until an aggrieved party discovers (or reasonably should have discovered) the facts giving rise to the cause of action. *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 894 (2007).  It is a well-settled rule that a cause of action does not accrue until the plaintiff discovers, or could have discovered through the exercise of reasonable diligence, all facts essential to his cause of action, including his injury and its cause. *April Enterprises, Inc. v. KTTV* , 147 Cal. App. 3d 805, 826–27 (1983). Equally well-settled, the question of whether the plaintiff exercised reasonable diligence in discovering his injury and its cause is a question for the trier of fact. *Fox v. Ethicon-Endo Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988); *April Enterprises*, 147 Cal. App. 3d at 833.

To constitute "discovery," the facts made known to a plaintiff must constitute a "reasonable and natural clue" to the facts yet to be discovered; the facts first known must bear a clear connection to the additional facts to be uncovered through reasonable investigation. *West v. Great Western Power Co. of California*, 36 Cal. App. 2d, 403, 407 (1940). A plaintiff who can discover the defendant's fraud by no other means than by deposition is not charged with constructive knowledge of the fraud. *Sime v. Malouf*, 95 Cal. App. 2d 82, 107–08 (1949).

Here, Plaintiff's Complaint sufficiently alleges the facts regarding Plaintiff's discovery of his claims. In fact, Plaintiff alleges the *precise time* and *manner* of discovery. Plaintiff's truck had several mechanical problems during the warranty period. Compl. ¶¶ 14, 78, 59–67, 89.  Plaintiff was told on each repair visit to Ford's authorized dealership that the problem was repaired and what had

3

been done to repair it. Compl. ¶¶ 59–68. Plaintiff could not have discovered facts giving rise to his claims until on or around January 25, 2016, after the warranty had expired and the engine in Plaintiff's vehicle required *another* repair for similar problems, requiring a replacement of the radiator, EGR cooler hoses, and thermostat, and a reprogramming of the PCM. Compl. ¶¶ 67, 78. This was the second time that the Subject Vehicle required replacement of EGR cooling hoses and radiator components. See Compl. ¶¶ 62, 67. This is when Plaintiff first discovered that Ford's previous repairs had failed to conform the Subject Vehicle to its express warranties and that the problems were not limited to his individual vehicle but were part of a widespread issue among Ford Super Duty trucks. Compl. ¶ 72. Prior to this date, Plaintiff had shown reasonable diligence by taking the Subject Vehicle to Ford's authorized repair facilities for repair. Compl. ¶¶ 59–67. During these repair visits, Ford, through its authorized agents, assured Plaintiff that Ford had and would repair any problems with the engine that occurred during the express warranty period. Compl. ¶¶ 47, 59–68, 78, 82. Due to the repeated false assurances of Ford and its service dealership agents at the time of these repairs, Plaintiff was unable to discover Ford's misrepresentations, even with diligent investigation. Compl. ¶¶ 46–51, 59–68, 70, 77–78. Plaintiff could not discover the irreparable defects sooner because the facts were concealed in confidential and privileged documents. *Id.* Further, no amount of diligence by Plaintiff could have led him to the discovery of these facts because they were kept secret by Ford. *Id.* Obviously, Ford's assertion that Plaintiff was silent on his alleged "diligence" or exactly how he was allegedly unable "to have made earlier discovery despite reasonable diligence. . ." is misplaced. Mot. 7:11–15.

According to the rules expressed in *Sime,* Plaintiff was entitled to rely on Ford's representations that the vehicle had been repaired. Plaintiff was not required to investigate Ford's representations regarding the repairs because Ford had superior knowledge regarding its 6.4L Engine. *See Sime*, 95 Cal. App. 2d at 107–08. Furthermore, no ordinary and reasonable person could be charged with knowledge that Ford was engaging in a scheme to market its defective 6.4L Engine, under the circumstances presented here. Ford concealed and misrepresented the qualities and attributes of the 6.4L Engine and its ability to repair the engine, knowing all the while that the engine was afflicted with irreparable defects. The delayed discovery rule therefore applies to toll each of

4

Plaintiff's claims against Ford.

### 2.     The Discovery Rule Applies to Toll Plaintiff's Song-Beverly Act Claims

Defendant argues that the statute of limitations on Plaintiff's Song-Beverly Act claims began to run when tender of delivery was made, and that the delayed discovery rule is inapplicable. Mot. 2:24–5:5. Defendant misstates the law. The cases cited by Defendant involve the Uniform Commercial Code ("**UCC**") in cases where courts have determined that the "future performance" exception of California Commercial Code § 2725(2) does not apply. *See* Mot. 4:8–27 (citing *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 134 (2008) and *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 231–32 (2006)). Under Section 2725(2), a cause of action for breach of warranty does not accrue on tender of delivery if the warranty "explicitly extends to future performance of the goods." Cal. Com. Code § 2725(2). In such cases, including cases involving express and implied warranties in the automobile context, the cause of action does no accrue until "the breach is or should have been discovered." *Id.*; *see Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908 (2010). Here, the terms of the express warranty explicitly extend to the future performance of the Subject Vehicle, that is "for five years after the warranty start date or 100,000 miles, whichever occurs first." Compl. ¶¶ 9, 44. Thus, the future performance exception applies, and the statute of limitations did not begin to accrue on Plaintiff's breach of express warranty claim until Plaintiff discovered the breach, as properly alleged, on or around January 25, 2016.

Plaintiff's breach of implied warranty claims under the Song-Beverly Act likewise did not accrue until Plaintiff discovered the breach. The Song-Beverly Act is a "strongly pro-consumer" statute that "should be given a construction calculated to bring its benefits into action." *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal. 4th 985, 990 (1998). Courts should avoid interpretations that conflict with "the policy repeatedly expressed by California courts of the need to construe the Song-Beverly Act so as to implement the legislative intent to expand consumer protection and remedies." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1131 (2009). The implied warranty of merchantability is essentially a warranty that the goods will be fit for the ordinary purpose for which the goods are used. Cal. Civ. Code § 1791.1(a). Under the Song-Beverly Act, the duration

5

of the implied warranty of merchantability is coextensive with a manufacturer's express warranty, but in no event will the duration be less than 60 days or more than 1 year. Cal. Civ. Code § 1791.1(c). By including a duration provision, the legislature clearly intended for the implied warranty to have a prospective existence beyond tender of delivery. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th at 1309.

In other words, under the implied warranty of merchantability contained the Song-Beverly Act, a manufacturer warrants that the goods will be fit for the ordinary purpose for the duration of the warranty, whether it be 60 days or one year. This is unlike the UCC's implied warranty of merchantability, which has no duration provision. Whereas the UCC's implied warranty of merchantability can only be breached at tender of delivery, the Song-Beverly Act's implied warranty of merchantability may be breached at tender of delivery *or at any time beyond tender of delivery*. Defendant cites to *Mexia* in support of the proposition that a breach of express warranty accrues when tender of delivery occurs. Mot. 2:24–25. However, the *Mexia* court did not address statutes of limitations or delayed discovery, but simply whether a defect that did not manifest until *after* the one-year implied warranty duration was actionable. Cases are not authority for propositions not considered therein. *In re Marriage of Cornejo*, 13 Cal. 4th 381, 388 (1996).

In *Mexia*, the plaintiff discovered a latent defect in his boat thirteen months after purchase, and therefore outside the one-year implied warranty. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th at 1311. Recognizing that the Song-Beverly Act was enacted to provide greater protections to consumers than the UCC, the court found that so long as a latent defect existed within the one-year period, its subsequent discovery beyond that time period did not defeat an implied warranty claim. *Id.* The court explicitly held that there was no support in the statute for an interpretation requiring a defect to be discovered and reported to the seller with a specified time. *Id.* at 1310. The one-year duration "merely creates a limited, prospective duration or the implied warranty of merchantability; it does not create a deadline for discovering latent defects or for giving notice to the seller." *Id.* at 1301.

In *Daniel v. Ford*, the Ninth Circuit reversed a district court's decision to grant summary judgment as to a claim for breach of implied warranty. *Daniel v. Ford Motor Co.*, 806 F.3d 1217

6

(9th Cir. 2015). The Ninth Circuit quoted *Mexia*'s holding, stating "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a *latent* defect within that time period." *Id.* at 1222 (emphasis added) (quoting *Mexia*, 174 Cal. App. 4th at 1297.) Therefore, for *purposes of assessing if there was a timely violation*, "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known" during the implied warranty period. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th at 1306. The court did not decide any other issues, as no other issues were before the court.

In *Ehrlich*, the defendant argued that the implied warranty claim was untimely if it was not filed within five years of the sale of the vehicle, representing the one-year implied warranty period and a four-year statute of limitations. *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d at 922. The plaintiff purchased his vehicle in 2004, and he filed his lawsuit in 2010. *Id.* at 912. The court rejected the defendant's argument, holding that "BMW's argument fails because it ignores the existence of the 4-year/50,000-mile express warranty which is a warranty that 'explicitly extends to future performance of the goods.' *That warranty tolled the statute of limitations until [the plaintiff] reasonably knew that his MINI would not perform as it should.*" *Id.* at 924–25. In *Falco v. Nissan North America*, Nissan argued that "an implied warranty brought more than five years from the date of delivery is time barred." *Falco v. Nissan North America, Inc.*, No. CV 13–00686 DDP (MANx), 2013 WL 5575065, at *10 (C.D. Cal. Oct. 10, 2013). The court found that "[t]his argument fails, however, because under California law, NNA's five year warranty had the effect of tolling the statute of limitations." *Id.* Therefore, *Falco* confirmed the prior holding in *Ehrlich* and held that the express warranty tolled the implied warranty. Despite the fact that the defects and nonconformities were present on the date of sale, Plaintiff's claim are not time-barred.

The nature of the defects in the 6.4L Engine, which do not appear immediately, necessitate delayed discovery. Despite the fact that the defects and nonconformities were present on the date of sale, Plaintiff's claims are not barred, because these latent defects were not discovered until years after the sale of the Subject Vehicle, as properly plead by Plaintiff. Compl. ¶¶ 69–82. Accordingly, Defendant Ford's contention that Plaintiff's Song-Beverly Act claims are time–barred is incorrect. The discovery rule applies to toll Plaintiff's Song-Beverly Act claims.

7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### 3.    The Doctrine of Fraudulent Concealment Applies to Toll Plaintiff's Claims

The doctrine of fraudulent concealment applies to toll Plaintiff's claims, because Ford and its authorized dealership intentionally concealed a material fact from Plaintiff at the time Plaintiff purchased the Subject Vehicle, and Ford continued to conceal that fact throughout Plaintiff's ownership of the Subject Vehicle, as properly and sufficiently pled.  Compl. ¶¶ 13–51, 69–82. Plaintiff has alleged specific facts to meet the elements of fraudulent concealment: (1) Ford concealed or suppressed a material fact (Compl. ¶¶ 13–51, 110–13); (2) Ford had a duty to disclose the fact to Plaintiff (Compl. ¶¶ 26, 73–75, 127); (3) Ford intentionally concealed or suppressed the fact with intent to defraud Plaintiff (Compl. ¶¶ 40–51, 110, 112, 114); (4) Plaintiff was unaware of the fact and would not have acted as he did had he known of the concealed or suppressed fact (Compl. ¶¶ 24, 33–34, 39, 77–78, 80–82, 116–17); and (5) Plaintiff was damaged as a result of the concealment (Compl. ¶¶ 25, 39, 49–50, 78, 118). *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–13 (1992); CACI No. 1901.

In order for undisclosed information to be considered material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently."  *Mirkin v. Wasserman*, 5 Cal. 4th at 1093.  The Complaint alleges that Ford concealed or suppressed information that the Subject Vehicle was equipped with a defective 6.4L Engine, which Ford could not repair under its express warranty. Compl. ¶¶ 13–51, 110–13.  The specific nature of the defects, including Defendants' inability to repair those defects, was concealed and not disclosed to Plaintiff. Compl. ¶¶ 35–51.  Plaintiff would not have purchased the Subject Vehicle, or would have paid substantially less for it, had he known about the defects in the 6.4L Engine at the time he purchased it. Compl. ¶¶ 25, 39, 49–50, 78, 118.

Ford had a duty to disclose to Plaintiff the information that it knew about the defects in the 6.4L Engine, because it had exclusive knowledge of the irreparable defects in the 6.4L Engine and actively concealed that information from Plaintiff.  Compl. ¶¶ 26–51, 73–75, 111.  Ford appears to suggest that Plaintiff was at fault because he was unable to somehow learn of the concealed latent defects in the 6.4L Engine sooner. *See* Mot. 13:6–16. To be sure, Defendant's concealment of the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

6.4L Engine's irreparable defects and Defendant's misrepresentations about its ability to repair the Subject Vehicle were specifically calculated to achieve the effect of delaying Plaintiff's *discovery* of the irreparable defects in the 6.4L Engine, for the purpose of reducing warranty expenditures. Compl. ¶¶ 46–50, 59–68. As Plaintiff's experience shows, Ford achieved that purpose. Compl. ¶¶ 59–68.

Ford cannot be allowed to impute inquiry notice on Plaintiff as early as the time of purchase. As discussed above, Plaintiff acted with reasonable diligence in attempting to learn about the defects in the Subject Vehicle's engine. However, these efforts were thwarted by Ford's intentional concealment of information pertaining to the defects and the "Band-Aid" repairs made by Ford's authorized service repair facilities. Compl. ¶¶ 46–50, 59–68. Plaintiff simply could not, despite reasonable diligence, have discovered the facts giving rise to his claims sooner. Compl. ¶ 78.

Ford's argument that Plaintitff's allegations are insufficient to meet the "plausibility" pleading standard of *Iqbal* and *Twombly* fails. First, Defendant claims that Plaintiff has not alleged specific dates on which the defects manifested themselves, the dates on which Plaintiff presented the Subject Vehicle for repair, or why Plaintiff could not have discovered the defects earlier than alleged. Mot. 12:20–23. Additionally, Defendant perplexingly claims that Plaintiff "traded in the Vehicle ten years later." Mot. 12:24–27. Defendant is confused. Plaintiff does not allege that he traded in the Subject Vehicle. *See generally* Compl. Moreover, Plaintiff alleges specific facts pertaining to the problems he experienced with the Subject Vehicle, including the dates the Subject Vehicle was presented to Ford's authorized repair facility, the problems that were identified, and the repairs that were effected. *See* Compl. 59–67. Furthermore, as discussed, Plaintiff has sufficiently and plausibly pled that he could not of discovered facts giving rise to his causes of action until the Subject Vehicle was presented for repair on January 25, 2016. At that presentation, Plaintiff learned for the *second* time of the need for major repairs to the 6.4L Engine's cooling system, including replacement of the radiator, EGR cooler hoses, and thermostat. Compl. ¶¶ 67, 78.

Defendant's apparent reliance on allegations stated in an entirely unrelated matter, involving different Plaintiffs is deficient to carry its argument in the instant matter. *See* Mot. 7:5–10; 12:20–23. Moreover, as discussed, Plaintiff has sufficiently pled allegations in support of his delayed

9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

discovery under the discovery rule and the doctrine of fraudulent concealment. Therefore, the doctrine of fraudulent concealment applies to toll Plaintiff's claims.

**B.     Plaintiff Has Sufficiently Pled All of His Fraud Claims with the Requisite Factual Specificity**

Plaintiff has sufficiently pled all of the claims in his Complaint with the requisite specificity. As such, Plaintiff has met the factual pleading requirements to put Defendant on notice of each of his claims and the facts on which those claims are based. Any assertion by the Defendant that Plaintiff's Complaint is factually deficient as to Plaintiff's causes of action shows that Defendant is choosing to be willfully ignorant about the allegations contained therein. Further, several factual disputes remain to be resolved by a trier of fact, thus making Defendant's motion for judgment on the pleadings wholly improper.

**1.   Plaintiff Has Sufficiently Pled His Misrepresentation Claims**

The elements of intentional misrepresentation are: (a) misrepresentation, (Compl. ¶¶ 41, 53–54, 56, 123–25, 132) (b) knowledge of falsity (or "scienter") (Compl. ¶¶ 13–34); (c) intent to defraud, i.e. to induce reliance (Compl. ¶¶ 24, 33–34, 76, 114, 117, 133–34, 140–41); (d) justifiable reliance (Compl. ¶¶ 55, 57, 127, 136); and (e) resulting damage (Compl. ¶¶ 24–25, 128–29, 137–38). *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997); CACI No. 1900. "A misrepresentation need not be oral; it may be implied by conduct." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App 4th 1559, 1567 (1996). "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Id.* Plaintiff specifically alleges the facts constituting each element of Defendant's fraud. Compl. ¶¶ 13–34, 40–51, 53–58, 76–77, 114–19, 123–29, 132–34, 136–38, 140–42. Moreover, "[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury." *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1081 (1998); *see also Davis v. Monte*, 81 Cal. App. 164, 170 (1927). The "question of whether a manufacturer's representation about a product is specific, and was relied upon by a consumer should be decided by a trier of fact." *Rutledge v. Hewlett-Packard Company*, 238 Cal. App. 4th 1164, 1176 (2015). Further, a cause of action for misrepresentation may be predicated on an *omission*. *McAdams v.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Monier*, 182 Cal. App. 4th 175, 185 (2010).  One "*who gives information of other facts which are likely to mislead for want of communication of that fact*" may be liable for misrepresentation. *Id.* (citation omitted).  Additionally, a "misrepresentation need not be oral; it may be implied by conduct." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th at 1567.

Ford contends in a general manner that Plaintiff's fraud claims are insufficiently pled because Plaintiff has not pled the "who, what, when, where and how" of Ford's alleged misconduct. Mot. 5:19–22, 6:5–8. In fact, Plaintiff has sufficiently pled the factual allegations supporting Plaintiff's misrepresentation claims.  First, Ford argues that the alleged misrepresentations are insufficient to form the basis Plaintiff's misrepresentation causes of action.  On the one hand, Defendant contends that the alleged misrepresentations contained in Ford's marketing materials are merely "nonactionable puffery," and on the other hand, Ford contends the statements made by the personnel at its authorized dealership are not attributable to Ford.  Ford's arguments lack merit.

Plaintiff in fact sufficiently alleges facts about the misrepresentations made by Ford and its authorized dealer, Salinas Valley Ford in Salinas, California; the statements made by Ford in its marketing materials and those made by its authorized dealership personnel are actionable; and Plaintiff has sufficiently pled his misrepresentation claims. Plaintiff alleges that Ford made representations to him through its marketing materials and its authorized agents. Compl. ¶¶ 41, 53–56, 123–25, 132. Specifically, Ford's marketing materials for the 2008 Ford Super Duty F-350 promised that the 2008 Ford Super Duty F-350 with the 6.4L Engine had an engine control module that had its durability "increased by two times to insure robustness," that its cooling system was "the industry's most robust cooling system to provide maximum power and torque under extreme operating conditions," with a 50% greater water pump flow rate, and that it offered "Best-in-Class" 5th-wheel and conventional towing, and "Best-in-Class" engine reliability, among other representations. Compl. ¶¶ 41, 53–54. Plaintiff received and understood these materials prepared by Ford before Plaintiff decided to purchase the Subject Vehicle.  Compl. ¶ 55.  Plaintiff visited Ford's authorized dealership, Salinas Valley Ford in Salinas, California, seeking vehicle to meet his needs. Compl. ¶ 56.  Plaintiff was told by the sales personnel at Ford's authorized dealership that the F-350 truck, as equipped with a 6.4L Engine, would meet all of his criteria, because—according to the

11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

salesperson, an authorized agent of Ford—the Super Duty F-350 was better and improved over prior Ford model trucks, which had been equipped with the previous 6.0 Liter PowerStroke Engine. Compl ¶ 56.  Plaintiff believed and reasonably relied on these verbal and written representations made by the marketing materials and sales personnel when he made his decision to purchase the Subject Vehicle. Compl. ¶¶ 55, 57, 127, 136.  Plaintiff would not have purchased the Subject Vehicle had he known the truth about the defects in the engine.  Compl. ¶¶ 24–25, 33–34, 39, 58, 128–29.

Defendant did not make any disclosures to Plaintiff to qualify the representations to make them not misleading. Problems with the 6.4L Engine were known by Ford prior to Plaintiff's purchase of the Subject Vehicle. Compl. ¶¶ 13–39.  Ford had exclusive knowledge of material facts that it failed to disclose to Plaintiff prior to his purchase of the Subject Vehicle.  Compl. ¶¶ 26–51, 77, 82.  Plaintiff would not have purchased the truck had he known of the problems with the 6.4L Engine. Compl. ¶¶ 24–25, 33–34, 39, 58. Defendant's failure to disclose the known problems rendered its representations misleading and fraudulent.  As a result, Plaintiff was duped into buying a truck that had latent defects in its engine that led to the truck having incessant problems.  While Defendant argues that Plaintiff has not shown Ford's representations to be false, Ford's representations about the 6.4L Engine are factual representations that can be objectively verified. Mot. 9:17–23.  The claims made by Ford and Ford's authorized dealer were false, and known to be false, at the time they were made.  Compl. ¶¶ 13–34, 121–26.

To the extent Ford implies that Plaintiff must identify who authored or presented the relevant promotional material to the Plaintiff, it is wrongheaded. The material itself constitutes the misrepresentation. Moreover, where the actual person who authored the false documents is not, and cannot, be known to the Plaintiff, they are not required to be identified in the complaint. "The requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lie more in the knowledge of the opposite party." *Tarmann v. State Farm Mutual Auto-Mobile Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991). The salesperson at Salinas Valley Ford, a Ford authorized dealership in Salinas, California, is identified in the Complaint as the person who relayed further misinformation regarding the qualities and capabilities of the F-350 Super Duty, and the 6.4L Engine

12

with which it was equipped, to Plaintiff. Compl. ¶¶ 56. His or her name is easily within the knowledge of Ford; it is merely a matter of obtaining the dealership's records. The person who authored Ford's promotional advertisements is strictly within the knowledge of Ford. Plaintiff has properly pled considerable and specific facts to apprise Ford of the fraud it committed.

Contrary to Defendant's contentions, Plaintiff's Complaint alleges more than "non-actionable puffery" by Ford. Plaintiff has incorporated by reference in each cause of action all other factual allegations stated elsewhere in the complaint. These allegations incorporated into Plaintiff's fraud-based causes of action contain detailed misrepresentations of facts made by Ford. *Paduano v. American Honda Motor Co.*, 169 Cal. App. 4th 1453 (2009), demonstrates the fallacy of Ford's contention that these statements are "nonactionable puffery." In that case, Honda advertised its Civic Hybrid as having "terrific gas mileage," its Montoney sticker stated a rating of 48 m.p.g. Honda's brochure boasted, "IS THERE ANYTHING SPECIAL I HAVE TO DO? *You just have to love saving money and getting terrific gas mileage*" and "*Just drive the Hybrid like you would a conventional car and save on fuel bills.*" *Id.* at 1472. The true facts were that the Hybrid's fuel economy was no better than 23-30 m.p.g. *Id.* at 1461. In order to achieve the higher gas mileage, the Hybrid had to be driven in "specialized" manner that was for all intents and purposes impossible given modern driving conditions. *Id.* at 1460. The court found that the representation that the Hybrid had "terrific gas mileage" was actionable. *Id.* at 1471–72. Moreover, a reasonable juror could find that the plaintiff had been misled because he drove the vehicle as a conventional car and did not receive "terrific gas mileage," that is, approximately 48 m.p.g. *Id.*

Here, similar to the statements in *Paduano*, Ford's statements about the 6.4L Engine are more than nonactionable "puffery": they are provably false, and were shown to be false as a result of the defects in the engine Plaintiff experienced. Compl. ¶¶ 41, 53–54, 56, 59–67. Similar to the "terrific gas mileage" claim in *Paduano*, a reasonable juror could find to be false and misleading Ford's claims that the F-350 equipped with a 6.4L Engine has superior towing capacity, "the industry's most robust cooling system to provide maximum power and torque under extreme conditions," and that the F-350 has "Best-in-Class" 5th-wheel towing, conventional towing, and payload. Compl. ¶¶ 41, 53–54, 56. As Plaintiff discovered, these claims were false and known to be false at the time

13

they were made.  Compl. ¶¶ 78, 124.

Each of the aforementioned are factual representations concerning the characteristics or standards of quality of the F-350 Super Duty truck and its 6.4L Engine that are reasonably capable of being proved false because objectively the truck either does or does not possess the alleged attributes, characteristics, and standards of quality.  As such, the representations made by Ford and its authorized dealer and agent, Salinas Valley Ford, amount to more than mere "non-actionable puffery"; they are actionable misrepresentations.  Lastly, Plaintiff's cause of action for negligent misrepresentation is equally supported with all the facts detailed above.  It is much the same as the intentional misrepresentation except there is no element of scienter.

For the foregoing reasons, Plaintiff's misrepresentation claims are sufficiently pled, and Defendant's Motion should be denied as to these claims.

### 2.    Plaintiff Has Sufficiently Pled His Fraudulent Concealment Claim

A claim for fraud based on concealment requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Boschma v. Home Loan Center, Inc*., 198 Cal. App. 4th 230, 248 (2011).  A duty to disclose occurs when any of the following occur: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1000–01 (N.D. Cal. 2007); *see also* CACI No. 1901.

Ford argues that Plaintiff's concealment and misrepresentation claims cannot be based on the conduct of Ford's authorized dealership personnel, and that Ford did not have a duty to disclose information pertaining to the 6.4L Engine defects. Mot. 7:22–10:7.  Ford cites *Avalon Painting Co. v. Alert Lumber Co.*, 234 Cal. App. 2d 178 (1965) (citing *Vandermark v. Ford Motor Co.*, 61 Cal.

14

2d 256 (1964)), to support its conclusion that no agency relationship exists between Defendant Ford and its authorized dealerships. Ford's reliance on this case is misplaced, and this assertion is contrary to well-established agency law. The case relied upon in the *Avalon* case, *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, does not contain any such holding. In *Vandermark*, the Supreme Court reversed in part a grant of nonsuit in favor of Ford on the grounds that the plaintiff had put forth evidence of a defect present in the car when it was sold to the plaintiff by the defendant dealership. *Vandemark*, 61 Cal. 2d at 261.

The court in *Daniel v. Ford*, 806 F.3d 1217 (9th Cir. 2015), found a nexus connection between Ford and the authorized dealerships, which gave rise to a duty to disclose. In *Daniel*, the plaintiffs alleged that Ford committed fraud in the sale of Ford Focus vehicles by not disclosing an inherent defect known to Ford. *Id*. at 1220–21. Prior to their purchase, the plaintiffs simply spoke to "authorized Ford dealership sales representative about the Focus when they made their purchases." *Id.* On appeal, the court held that a reasonable jury could find that "Ford knew that its customers depended at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged rear suspension defect to consumers if Ford had required it." *Id.* at 1227. Therefore, the court found that "there is a genuine issue of material fact as to whether they in fact relied on Ford's omissions in purchasing the Focus." *Id.* Here, Plaintiff's Complaint sufficiently alleges the agency relationship between the Defendant Ford and its authorized dealer, Salinas Valley Ford.  Compl. ¶¶ 8, 21, 41.  In particular, Plaintiff alleges that "Ford trained its dealers throughout the country to specifically tout the supposedly superior attributes of the engine, without ever mentioning its troubled history of design, manufacturing, and reliability defects." Compl. ¶ 41.  Plaintiff's Complaint further alleges that Plaintiff relied on information provided by Ford and its authorized dealership, Salinas Valley Ford. Compl. ¶ 59. Thus, a genuine issue of material fact exists.

Ford had a duty to disclose the concealed facts because Ford had exclusive knowledge of material facts relating to the problems with the 6.4L Engine that it actively concealed from Plaintiff. Ford initially acknowledges that there are four ways for a duty to disclose to arise, *including* when the defendant had exclusive knowledge, or when the defendant actively conceals a material fact.

15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Mot. 8:1–8. Although Defendant's Motion claims, in a heading, that Ford did not possess exclusive knowledge, Defendant neglects to provide a substantive discussion of this issue in its Motion. *See* Mot. 8:14–9:14. Thus, to the extent Ford denies it was not in possession of exclusive knowledge of the 6.4L Engine defects, that denial is ineffective. Moreover, Ford does not deny that Ford actively concealed material facts from Plaintiff. Instead, Defendant merely offers a conclusory statement that there was no fiduciary relationship between Ford and Plaintiff.

Additionally, Ford simply argues that Plaintiff's cause of action for concealment fails because the misrepresentations made by Ford are "nonactionable puffery." Mot. 10:10–11:14. As discussed, the representations made by Ford and its authorized dealership, Salinas Valley Ford, are more than mere "nonactionable puffery": these statements amount to actionable misrepresentation. Thus, Defendant's argument is without merit, and Ford's Motion as to Plaintiff's cause of action for fraudulent concealment fails as a matter of law. Plaintiff's Complaint sufficiently alleges that Ford was aware of widespread problems with the 6.4L Engine prior to the sale to Plaintiff and had a duty to disclose.

Despite Ford's contention to the contrary, the crux of Plaintiff's fraudulent concealment claim is that Ford *did* identify a defect relating to motor vehicle safety, prior to the sale of the vehicle, and did not disclose it to consumers, such as Plaintiff. *See* Compl. ¶¶ 13–51. Plaintiff's Complaint alleges that Ford concealed or suppressed the material fact that the Subject Vehicle was equipped with a defective 6.4L Engine that would exhibit ongoing problems. Compl. ¶¶ 109–29. Despite Ford's access to abundant analysis and feedback concerning the problematic 6.4L Engine, Ford continued to conceal and suppress the information regarding the defect. *See* Compl. ¶¶ 26–51, 69–79. The existence of the engine defect is a material fact that a reasonable consumer would consider in determining whether to purchase or lease a vehicle. Compl. ¶¶ 24, 33–34, 58, 117–18, 127–129, 134, 141–42.

In addition, Ford does not provide any legal authority as to what constitutes exclusive knowledge. Exclusive knowledge in the context of a duty to disclose a defect does not mean that no one else on the planet other than the manufacturer has any knowledge of the defect. This would be an impossible standard that would effectively remove concealment as a cause of action, and is

16

contrary to applicable law.  Courts have not defined "exclusive" literally, but have found the standard met if the defendant had "superior" knowledge of a defect. In *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007), the court found a duty to disclose based on "exclusive knowledge" where the manufacturer had superior knowledge of a defect that was not readily apparent. *Id.* Even though the plaintiff had alleged that consumers had raised many complaints about the vehicle defect at issue and that certain information was available online, "[m]any customers would not have performed an Internet search before beginning a car search" and they were not required to do so. *Id*. at 1092. In *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 754 F. Supp. 2d 1145, 1174, 1192 (C.D. Cal. 2010), the court found that the plaintiffs had established "a duty to disclose because they allege that Toyota has *superior* knowledge of the SUA defects." *Id.* (emphasis added).

In *Daniel v. Ford Motor Co*., No. 2:11-02890 WBS EFB, 2016 WL 2899026 (E.D. Cal. May 18, 2016), Ford argued that it lacked exclusive knowledge because the plaintiff had been told by technicians that the subject vehicle was known for the defect at issue (premature tire wear), Ford technicians were informing consumers that such tire wear was a normal characteristic, and that there was widespread knowledge at Ford dealers that the Ford Focus was a tire eater. *Id.* at 4–5. The court found that Ford had superior knowledge for purposes of a duty to disclose because "a prospective purchaser might have learned about the tire problem only if he happened to talk to a technician or Ford dealer who happened to mention it." *Id.* at 5. Further, if the law does "not require prospective customers to search the internet for complaints, they surely do not require them to contact numerous technicians to find out if any of them happen to know of any tire issues or, more importantly, an undisclosed rear suspension defect." *Id.* The court also reiterated the holding in *Toyota Motor Corp* that the ability to find customer complaints on the internet did not defeat Ford's exclusive knowledge for purposes of a duty to disclose. *Id.*

Ford cites to *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 665–66 (1996), where the court noted that *in that particular case* there were two applicable theories for why the defendant was obligated to disclose, including a fiduciary relationship. Mot. 8:16–19. However, the court did not hold that there were no other methods of proving a duty to disclose. *Roddenberry*, 44 Cal. App. 4th

17

at 666. This is even more apparent because the *Roddenberry* court cited to the California Supreme Court's decision in *Warner Construction Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970), which recognized that a duty to disclose may arise when the material facts are known or accessible only to defendant, or if the defendant actively conceals the facts. *Id*. at 294.

"Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d at 1000–01.  Ford had a duty to disclose the concealed facts alleged in Plaintiff's Complaint because Ford knew that the internal testing, previous consumer complaints, and other internal information were not readily accessible to Plaintiff.  Compl. ¶¶ 26–32, 73–74, 80, 82, 111, 121. Further, Defendant had a duty to disclose the concealed facts about the 6.4L Engine because Defendant actively concealed material facts in order to induce Plaintiff's false belief in the quality, characteristics, and safety of the 6.4L Engine.  Compl. ¶¶ 40–51, 75.

Ford also relies on *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834 (2006), for the argument that "[c]oncealment requires that a 'representation was made to which the alleged concealment was contrary." Mot. 9:13–15 (quoting *Daugherty*, 144 Cal. App 4th at 834). However, *Daugherty* held (on the page *after* Ford's citation) that "[i]n short, although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, *or an omission of a fact the defendant was obliged to disclose*." *Id*. at 835 (emphasis added).

Finally, Plaintiff was damaged by Ford's concealment of the 6.4L Engine defect because Plaintiff entered into the sale of a vehicle that Plaintiff would not have otherwise purchased.  Compl. ¶¶ 117–119, 127–129, 132–34. As such, Plaintiff's concealment claim is sufficiently pled, and the Court should deny Ford's Motion.

//

//

18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### C.    The Economic Loss Rule Does Not Apply

Defendant alleges that Plaintiff's fraud causes of action are precluded by the economic loss rule.  Defendant's argument is frivolous, as it is contrary to all controlling legal authority on the economic loss rule, which provides for an exception to the economic loss rule where the claims are entirely separate, including *fraudulent inducement* to enter into a contract.

California courts have consistently held that "recognizing the adverse effect fraud has on commercial transactions, the law permits a defrauded party to seek punishment of the wrongdoer through the imposition of punitive damages."  *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1238–39 (1991). "*Punitive damages may be awarded where a defendant fraudulent induces the plaintiff to enter into a contract.*"  *Id*. at 1239 (emphasis added). In *Harris v. Atlantic Richfield*, 14 Cal. App. 4th 70, 77–78 (1993), the court explained that there were three general exceptions to the economic loss rule: independent torts, tortious breach of implied covenant, and bad faith denial of a contract.  *Id*. The court held that "[t]he most widely recognized exception is when the Defendant's conduct constitutes a tort as well as a breach of contract.  *For example, when one party commits a fraud during the contract formation . . . the injured party may recover in contract and tort.*"  *Id.* (emphasis added) (citing *Godfrey v. Steinpress*, 128 Cal. App. 3d 154 (1982)).

Summarizing the appellate authority on the subject, the California Supreme Court held that there are generally three situations in which a tortious breach of contract may be found outside of the insurance contract: "(1) The breach is accompanied by a traditional common law tort, *such as fraud* or conversion, (2) the means used to breach the contract are tortious, involving deceit or undue coercion, (3) intentional breach knowing it will cause severe immitigable harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 553–54 (1999) (emphasis added).   The court went on to hold that "Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury, for breach of the covenant of good faith and fair dealing in insurance contracts, for wrongful discharge in violation of fundamental public policy, *or where the contract was fraudulently induced*.  In each of these cases, the duty that gives rise to tort liability is completely independent of the contract." *Id.* at 551–52 (emphasis added).

19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

In *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004), the California Supreme Court again addressed the issue of the economic loss rule, but in the context of fraud *in the performance of an ongoing contract* (not fraudulent inducement to *enter* into a contract). *Id.* at 984. The court's ruling opened with "[i]n this case, we decide whether the economic loss rule … applies to claims for intentional misrepresentation or fraud *in performance of contract*." *Id.* at 984 (emphasis added). The court explained and confirmed its prior ruling in *Erlich v. Menezes*, stating that in *Erlich* they discussed "several instances where tort damages were permitted in contract cases." *Id.* at 989. The court found:

> Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy *990 [citation]; or where the contract was fraudulently induced. [Citation.]" (*Id.* at pp. 551–552, 87 Cal.Rptr.2d 886, 981 P.2d 978.) "[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. [Citation.]" (*Id.* at p. 552, 87 Cal.Rptr.2d 886, 981 P.2d 978; see also *Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 78, 17 Cal.Rptr.2d 649 ["when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort"].)

*Id.* at 989–90. The *Robinson* court upheld the existing exceptions to the economic loss rule, and emphasized that "[f]or purposes of our decision, we focus solely on the fraud and misrepresentation claim based on Dana's provision of the false certificates of conformance"  and found that in issues of fraud in the *performance* of an existing contract (including misrepresentations made during the existence of the contract), misrepresentations and exposure to liability for personal damages created a new exception to the economic loss rule. *Id.* at 990–91.  Again, the court explicitly did not address the issue of fraudulent inducement in the formation of a contract, and cited approvingly its prior decision upholding the widely accepted exception for fraudulent inducement.

The law is clear: Plaintiff's fraud claims are entirely independent from Plaintiff's statutory Song-Beverly Act claim, and therefore not prohibited by the economic loss rule.  Plaintiff's fraud allegations arise from Ford's misconduct in fraudulently inducing Plaintiff to enter into the Retail Installment Sales Contract on the day of the sale.

Even if, as Ford suggests (despite the law to the contrary) that *Robinson Helicopter* provides

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

the sole exception, Plaintiff would *still* qualify under it. *Robinson* allowed (again, in the context of fraud in the performance of a contract) for an exception to the economic loss rule where there was fraud and exposure to liability for personal damages independent of the plaintiff's economic loss. *Id.* at 993. In *Robinson*, there was no evidence introduced at trial that the nonconforming clutches sold to the plaintiff had actually caused or would likely cause helicopters containing these clutches to be involved in future crashes. Rather, the *possibility* that such helicopter crashes could have occurred as a result of these nonconforming clutches, and that such crashes could have potentially exposed the plaintiff to monetary damages in lawsuits from injured persons or to fines was deemed sufficient for the plaintiff to obtain tort damages. *Id.* Here, Plaintiff has been exposed to personal harm while driving the Subject Vehicle as a result of problems with the 6.4L Engine, including several engine oil leaks, fuel system issues, turbocharger issues, cooling system issues, exhaust issues, and inability to tow his recreational vehicle. While no accidents occurred, plaintiff was exposed to potential injury and liability. Under the framework in *Robinson*, Plaintiff's exposure—combined with the fraud—is sufficient to avoid the economic loss rule.

## III.   IF THE MOTION IS GRANTED THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND THE COMPLAINT

The court has broad discretion to permit a party to amend its pleading. "In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation omitted). The Ninth Circuit has noted on several occasions that the "Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed].R.Civ.P., by freely granting leave to amend when justice so requires. Thus 'rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Id*. (citations omitted). The court should grant leave to amend where there is no bad faith, undue delay, or prejudice to the opposing party.

If this Court finds merit in Defendant's Motion, Plaintiff respectfully requests that the Court permit Plaintiff to amend his complaint. There is no evidence of bad faith or undue delay, and discovery is still open, thus there could be no prejudice to the defendant.

21

## IV.    CONCLUSION

Defendant's Motion must be denied. First, there are several issues of fact that remain to be determined by a jury, and thus a motion for judgment on the pleadings, which requires all factual issues to be resolved, is improper. Second, Plaintiff has pled sufficient facts to sustain all claims alleged in his Complaint. Further, Plaintiff's claims are timely because the delayed discovery rule and the doctrine of fraudulent concealment apply to toll Plaintiff's claims.  For the foregoing reasons, Ford's Motion must be denied.

Dated: March 28, 2019                                    **KNIGHT LAW GROUP LLP**

                                                              /s/ Daniel Kalinowski

                                                             Daniel Kalinowski
                                                             Steve Mikhov
                                                             Attorneys for Plaintiff,
                                                             WAYNE W. YETTER

22