UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WAYNE W. YETTER,<br><br>  Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>  Defendant. | Case No. 19-CV-00877-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 12 |

Plaintiff Wayne Yetter ("Plaintiff") brings suit against Defendant Ford Motor Company ("Defendant") for claims arising from Plaintiff's purchase of a vehicle manufactured by Defendant. Before the Court is Defendant's motion for judgment on the pleadings. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion for judgment on the pleadings with leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiff resides in Salinas, California. ECF No. 1-3 ("Compl."), ¶ 2. Defendant Ford is a vehicle manufacturer incorporated in Delaware. *Id.* ¶ 3. On June 30, 2008, Plaintiff purchased a

1

new 2008 Ford Super Duty F-350 truck from Salinas Valley Ford, an authorized dealer of Defendant's vehicles. *Id.* ¶¶ 9, 56. Plaintiff paid $56,673 for the vehicle. Compl., Ex. 1.

Plaintiff alleges that the vehicle that Defendant manufactured and that Plaintiff purchased contains a defective engine. *Id.* ¶¶ 10, 13. Navistar supplied a 6.4 liter engine for Ford's Super Duty trucks for model year 2008 to 2010. *Id.* ¶ 15. Ford claimed that the 6.4 liter engine "had 'been tested the equivalent of 10 million miles on road and in the lab, helping ensure excellent long-term durability.'" *Id.* Plaintiff alleges that in reality, the 6.4 liter engine "is plagued by numerous problems and safety concerns." *Id.* ¶ 17. For example, the engine loses power while in operation and is subject to overheating. *Id.* ¶ 19. Other defects "result[] in premature engine failure and require[] expensive repairs, including premature engine replacement." *Id.* ¶ 20.

Plaintiff alleges that Ford alerted automotive technicians about "several defects common to the 6.4L Engine." *Id.* ¶ 29. Ford also issued two different recall notices in March 26, 2007 for Super Duty trucks for other defects not related to the engine, including an "excessive temperature defect" and a "wiring defect." *Id.* ¶ 30. However, Ford has never developed a plan to identify and eliminate "the root cause of defects to the 6.4L Engines," nor has Ford implemented a recall of the engines. *Id.* ¶ 46. Instead, Ford instructed its dealers to undertake repairs that "misled customers to believe that the underlying problem had been fixed, when in fact the symptom likely would reoccur on a later date." *Id.* ¶ 47.

Plaintiff read promotional materials and viewed Ford advertisements that represented that the Super Duty F-350 had "best-in-class towing power and engine reliability." *Id.* ¶¶ 53–54. Before Plaintiff purchased the vehicle on June 30, 2008, a salesperson at Salinas Valley Ford "verbally represented to Plaintiff that the Super Duty F-350 was better and improved over prior Ford models, and specifically, that the new 6.4L Engine was a newly designed higher performing and better engine [sic] than the previous 6.0 Liter PowerStroke Engine." *Id.*

Plaintiff delivered the vehicle to "an authorized Ford repair facility" for various repairs on multiple occasions, including on January 15, 2009; July 9, 2009; March 4, 2010; December 7,

2

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

2010; January 5, 2011; October 3, 2011; April 30, 2012; October 27, 2012; and January 25, 2016. *Id.* ¶¶ 59–67. On each occasion, the technician at the repair facility informed Plaintiff "that the Vehicle had been repaired and was safe to drive." *Id.*

Several of Plaintiff's repairs concerned the engine. On December 7, 2010, Plaintiff complained "that the check engine and wrench light were on and that the vehicle lacked power." *Id.* ¶ 62. Again, on October 3, 2011, "Plaintiff complained that the check engine light was on" and "that the engine had an exhause [sic] leak." *Id.* ¶ 64. On October 27, 2012, "Plaintiff complained that the vehicle displayed the message 'reduced engine power.'" *Id.* ¶ 66.

### B. Procedural History

On January 17, 2019, Plaintiff filed a complaint against Defendant in California Superior Court for the County of Monterey. ECF No. 1-3 ("Compl."). Plaintiff's complaint alleges five causes of action: (1) breach of express warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), *id.* ¶¶ 83–97; (2) breach of implied warranty under the Song-Beverly Act, *id.* ¶¶ 98–108; (3) fraudulent concealment, *id.* ¶¶ 109–119; (4) fraudulent inducement – intentional misrepresentation, *id.* ¶¶ 120–129; and (5) fraudulent inducement – negligent misrepresentation, *id.* ¶¶ 130–145. Plaintiff also alleges that "all statute of limitations periods are tolled by the discovery rule and the doctrine of fraudulent concealment." *Id.* ¶ 69.

On January 31, 2019, in state court, Defendant filed an answer to Plaintiff's complaint. ECF No. 1-3, Ex. B. On February 19, 2019, Defendant removed the case to federal court. ECF No. 1.

On March 14, 2019, Defendant filed the instant motion for judgment on the pleadings. ECF No. 12 ("Mot."). On March 28, 2019, Plaintiff filed his opposition, ECF No. 14 ("Opp."), and on April 3, 2019, Defendant filed its reply. ECF No. 15 ("Reply").

## II. LEGAL STANDARD

### A. Rule 12(c) Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for

3
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**B. Rule 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular

4

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

**C. Leave to Amend**

If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131, 1134–35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Defendant contends that the Court should grant judgment on the pleadings on all five of

5

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

Plaintiff's claims. Defendant's primary argument is that Plaintiff's claims are all time-barred by the relevant statutes of limitation because Plaintiff purchased the vehicle in 2008 and did not file suit until 2019. The Court agrees. Although this conclusion alone justifies dismissal of all of Plaintiff's claims, the Court briefly discusses Defendant's other arguments that Plaintiff's complaint fails to state a claim. The Court first explains how Plaintiff's claims are time-barred and then discusses the other deficiencies in Plaintiff's complaint.[1]

**A. Statute of Limitations**

Plaintiff brings two claims under the Song-Beverly Act and three common law claims for fraud. All five of Plaintiff's claims are barred by the relevant statute of limitations. First, Plaintiff's claims under the Song-Beverly Act for violation of express and implied warranty are both subject to a four-year statute of limitations. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 213–15 (1991); *see Philips v. Ford Motor Co.*, 2016 WL 1745948, at *6 (N.D. Cal. May 3, 2016) (explaining that California courts apply to Song-Beverly Act claims the four-year statute of limitations that is also applicable to warranty actions under the California Commercial Code).

Second, Plaintiff's fraud claims—specifically, for intentional fraudulent inducement, negligent fraudulent inducement, and fraudulent concealment—are all subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d); *see Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001) ("An action for relief on the grounds of fraud or mistake must be commenced within three years."). Accordingly, because Plaintiff purchased his vehicle on June 30, 2008, the statute of limitations on Plaintiff's claims appear to have expired on June 30, 2011 (for Plaintiff's fraud claims) and on June 30, 2012 (for Plaintiff's Song-Beverly Act claims)—several years before

---

[1] As district courts have noted in other cases involving Ford and the same attorneys here, both parties' briefs appear to include recycled arguments. *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *1 n.1 (N.D. Cal. Jun. 4, 2018). Although Wayne Yetter is the sole Plaintiff, Defendant's brief often refers to multiple "Plaintiffs." *See, e.g.*, Mot. at 12–13. Similarly, Plaintiff refers to Plaintiff's "inability to tow his recreational vehicle"—but Plaintiff's complaint includes no allegation that Plaintiff even owned a recreational vehicle. *See* Opp. at 21.

6
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

Plaintiff filed his lawsuit on January 17, 2019. Although Plaintiff contends that Plaintiff's claims did not accrue until 2016 and that the statutes of limitation were tolled until 2016, Plaintiff's arguments are unavailing.

### 1. The Future Performance Exception Does Not Save the Express Warranty Claim

First, Plaintiff contends that under the future performance exception, the four-year statute of limitations on Plaintiff's express warranty claim began to run not when Plaintiff purchased his vehicle on June 30, 2008, but rather on January 25, 2016, the date of Plaintiff's last visit to a Ford dealership to repair the vehicle's engine. Opp. at 5. However, even accepting Plaintiff's allegation that the future performance exception applies, the four-year statute of limitations began to run on June 30, 2013, and thus expired on June 30, 2017, a year and half before Plaintiff filed his January 17, 2019 complaint.

Under the Song-Beverly Act, an express warranty claim normally accrues at tender of delivery, with a limited exception for future performance:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1306 (2009) (quoting Cal. Comm. Code § 2725(2)). The future performance exception "must be narrowly construed." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 130 (2008). As such, the future performance exception "applies only when the seller has expressly agreed to warrant its product *for a specific and defined period of time*." *Id.* (emphasis in original).

In this case, Plaintiff argues that the future performance exception applies because Defendant's express warranty on Plaintiff's engine extended "for five years after the warranty start date or 100,000 miles, whichever occurs first." Compl. ¶ 44; *see* Opp. at 5. Even accepting Plaintiff's allegation about the express warranty as true, the future performance exception does not

7

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

render Plaintiff's complaint timely. The express warranty extended for only five years. If the express warranty extended for five years from Plaintiff's June 30, 2008 purchase of the vehicle, the express warranty ended on June 30, 2013. On June 30, 2013, the four-year statute of limitations under the Song-Beverly Act began to run, which means that the statute of limitations expired on June 30, 2017. However, Plaintiff did not file his complaint until January 17, 2019, more than a year and a half after the statute of limitations expired. Accordingly, the future performance exception does not save Plaintiff's express warranty claim.

### 2. Neither the Delayed Discovery Rule nor Fraudulent Concealment Tolling Applies to any of Plaintiff's Claims

Second, Plaintiff contends that under the delayed discovery rule, the statute of limitations on all of Plaintiff's claims did not begin to run until January 25, 2016, the date of Plaintiff's last visit to an authorized Ford repair facility to repair the vehicle's engine. Opp. at 3.

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *WA Southwest2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156 (2015). "A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotation marks and citation omitted). To allege that the discovery rule applies, a plaintiff must allege "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (citation omitted) (emphasis in original). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." *Kline*, 87 Cal. App. 4th at 1374.

Relatedly, Plaintiff contends that the fraudulent concealment doctrine tolled the statute of limitations on his claims until January 25, 2016. Opp. at 8. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).

8

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

"This doctrine requires the plaintiff to (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (citing *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003)). In other words, a plaintiff must allege both the elements of fraud and "an excuse for late discovery of the facts." *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011) (internal quotation marks and citation omitted). Even if there is fraudulent concealment, "the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012).

Accordingly, to merit application of the discovery rule or fraudulent concealment tolling, a plaintiff must allege that he exercised due diligence to uncover his injury. *See Allen*, 96 F. Supp. 3d at 1071 (applying the "same reasoning" to whether the plaintiff exercised the due diligence required to apply either the discovery rule or fraudulent concealment tolling).

Defendant contends that Plaintiff has failed to adequately allege that Plaintiff was unable to discover the engine defect until January 25, 2016. The Court agrees. After Plaintiff purchased his vehicle in June 2008, Plaintiff tendered the vehicle to authorized Ford repair facilities on *eight different occasions* between January 9, 2009 and October 27, 2012. *See* Compl. ¶¶ 59–66. Several of those repair visits involved problems with Plaintiff's engine, the very defect that Plaintiff claims not to have discovered until January 25, 2016. For example, on December 7, 2010, Plaintiff "complained that the check engine and wrench light were on and that the vehicle lacked power." *Id.* ¶ 62. On October 3, 2011, "Plaintiff complained that the check engine light was on" and "that the engine had an exhause [sic] leak." *Id.* ¶ 64. On October 27, 2012, "Plaintiff complained that the vehicle displayed the message 'reduced engine power.'" *Id.* ¶ 66. Accordingly, it is not plausible that Plaintiff first discovered a defect with his vehicle's engine in January 2016. With any reasonable diligence, Plaintiff should have been aware of a problem by October 27, 2012 at the latest (and likely earlier), after his engine had already required multiple

9
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

repairs.

Multiple courts have reached the same conclusions on almost identical allegations, including in another case involving allegations about Ford defects. In *Finney*, the plaintiff, Finney, alleged that although she purchased her Ford Super Duty truck in 2005 and delivered the truck for repairs on several occasions between 2005 and 2010, she first became aware of defects with the truck's engine in March 2015 when her check engine light came on. *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *1 (N.D. Cal. June 4, 2018) ("*Finney I*"). Finney attempted to invoke the discovery rule and fraudulent concealment tolling. *Id.* at *3. As Plaintiff does in this case, Finney argued that she was unable to discover the defect until March 2015 because after each repair visit, technicians told Finney that the car was repaired. *Id.* at *4. The district court rejected Finney's allegations as insufficient: "Finney's allegations are particularly implausible given the absence of an explanation as to why a 2015 engine light revealed the defect, but no prior engine issue—whether during the 2005 to 2010 warranty repair period, or after—revealed the defect." *Id.* The district court gave Finney leave to amend her complaint to rectify the problems with her discovery rule and fraudulent concealment allegations. *Id.* at *9.

After Finney amended her complaint, the district court again concluded that Finney had not plausibly alleged delayed discovery or fraudulent concealment tolling. *Finney v. Ford Motor Co.*, 2019 WL 79033 (N.D. Cal. Jan. 2, 2019) ("*Finney II*"). The district court found insufficient Finney's allegation that the Ford dealership repeatedly told her, after each successive repair, that her truck was fixed:

> If anything, these allegations more starkly illustrate the flaws in Finney's delayed discovery claim: she fails to explain how the illumination of a check-engine light alerted her to the existence of her claims in 2015, while repeated problems with the same engine between four and eight years earlier did not. After four visits to the dealership for repairs in as many years, Finney should have suspected that something was amiss, regardless of representations that the problem was fixed.

*Id.* at *3. As a result, the district court granted Ford's motion for judgment on the pleadings on all claims without leave to amend. *Id.* at *4–5.

10
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

Likewise in *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014), the plaintiff Herremans purchased a vehicle in 2008 and brought the vehicle in for multiple repairs to her water pump, the last in January 2013. *Id.* at *1. Herremans argued that the discovery rule and fraudulent concealment tolling applied because she was unaware of the defect until "the car needed repairs a second time." *Id.* at *5. However, the district court held that Herremans' allegations were insufficient because Herremans failed to plead "why, in the exercise of reasonable diligence, she could not have discovered the defect earlier." *Id.*

In this case, Plaintiff fails to allege why only the 2016 repair, and not any of the eight prior repairs to the vehicle in the four years after Plaintiff purchased the vehicle, put Plaintiff on notice of an engine defect. As in *Finney II*, Plaintiff should have been aware by October 2012—after the eighth repair to Plaintiff's vehicle in four years—that "something was amiss, regardless of representations that the problem was fixed." *Finney II*, 2019 WL 79033, at *3. Plaintiff's allegation that Plaintiff only became aware of the engine defect in January 2016, even though the Ford dealer that Plaintiff visited in January 2016 made the same representation as after all prior repairs "that the Vehicle had been repaired and was safe to drive," is implausible. Compl. ¶ 67. Plaintiff does not allege any facts related to what, if anything, changed in January 2016, eight years after Plaintiff purchased the vehicle, to finally bring the defect to light.

In his complaint, Plaintiff alleges that Defendant kept information about the defect secret from Defendant: "No amount of diligence by Plaintiff could have led to discovery of these facts because they were kept secret by Ford." Compl. ¶ 81. Similarly, Plaintiff argues in his opposition that "Plaintiff could not discover the irreparable defects sooner because the facts were concealed in confidential and privileged documents" and "could not discover Ford's misrepresentations" for the same reasons. Opp. at 4. Yet Plaintiff fails to allege that Plaintiff became aware of those "confidential and privileged documents" in January 2016, or to offer any explanation for his January 2016 realization about the defect. Regardless, Plaintiff misstates what is required for Plaintiff to allege that he exercised reasonable diligence. Discovery occurs "not when the plaintiff

11

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." *Kline*, 87 Cal. App. 4th at 1374. Thus, Plaintiff's claim began to accrue when he suspected or should have suspected that his vehicle suffered from a defect, which occurred at the latest in October 2012.

Accordingly, because Plaintiff has not plausibly alleged reasonable diligence, Plaintiff is not entitled to invoke the discovery rule or fraudulent concealment tolling. *See Finney I*, 2018 WL 2552266, at *4 (concluding that the plaintiff's failure to exercise reasonable diligence precluded both the discovery rule and fraudulent concealment tolling). At the latest, Plaintiff became aware of the defect in October 2012, after his eighth repair to the vehicle. *See* Compl. ¶ 66. The statute of limitations thus ran in October 2015 (for Plaintiff's fraud claims) or October 2016 (for Plaintiff's Song-Beverly Act claims), well before Plaintiff filed his lawsuit on January 17, 2019. Therefore, Plaintiff's claims are all time-barred, and the Court GRANTS Defendant's motion for judgment on the pleadings.

Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### B. Deficiencies in Fraud Claims

Even though the statute of limitations alone suffices to grant Defendant's motion for judgment on the pleadings on all of Plaintiff's claims, the Court briefly addresses Defendant's other arguments that Plaintiff's fraud claims are inadequate. Plaintiff brings claims for fraudulent inducement – concealment, fraudulent inducement – intentional misrepresentation, and fraudulent inducement – negligent misrepresentation. Compl. ¶¶ 109–145.

First, Defendant argues that the economic loss rule bars Plaintiff's fraud claims. Under the economic loss rule, "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)

12
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

(internal quotation marks and citation omitted). However, the economic loss rule does not bar a claim, like Plaintiff's, for fraudulent inducement of the contract: "[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)); *see also R Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296, at *5–6 (N.D. Cal. Mar. 29, 2017) (recognizing that fraudulent inducement "is a well-recognized exception to the economic loss rule," and denying motion for judgment on the pleadings on the plaintiff's fraudulent inducement claim). Thus, the economic loss rule does not bar Plaintiff's fraud claims, all of which sound in fraudulent inducement.

However, Defendant more persuasively argues that Plaintiff has failed to plead his fraud claims with the specificity that Rule 9(b) requires. To allege a fraud claim based on misrepresentations, as Plaintiff does in this case, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106.

For example, in *Kearns*, the plaintiff alleged that he was exposed to misrepresentations about Ford vehicles through "(1) Ford's televised national marketing campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales personnel working at the dealership where he bought his vehicle." 567 F.3d at 1126–27. The Ninth Circuit held that these "general pleadings" were insufficient because the plaintiff failed to allege "the particular circumstances surrounding such representations." *Id.* at 1126. In particular, the plaintiff failed to "specify what the television advertisements or other sales material specifically stated" or when he was exposed to them, "which sales material he relied upon," and which salesperson made any representations about the vehicles to the plaintiff. *Id.* The Ninth Circuit thus upheld the dismissal of the plaintiff's claims for failure to satisfy Rule 9(b). *Id.* at 1127.

*Kearns* dictates the result in this case. Plaintiff generally alleges that before he purchased the vehicle, "Plaintiff received and read written promotional materials prepared by Ford," but

13
Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

Plaintiff fails to allege what those promotional materials were, how Plaintiff received them, and specifically when Plaintiff read the materials. Compl. ¶ 53. Plaintiff also generally alleges that he "saw television commercials and heard radio commercials" about the Super Duty F-350's features, but does not specify when he viewed those commercials, which specific commercials he saw or heard, and any specific statements Defendant made in those commercials. *Id.* ¶ 54. Finally, Plaintiff alleges that a salesperson at Salinas Valley Ford "verbally represented" to Plaintiff that "the new 6.4L engine was a newly-designed higher performing and better engine than the previous 6.0 Liter PowerStroke Engine." *Id.* ¶ 56. However, Plaintiff does not allege what the salesperson specifically said or the salesperson's identity. *See Finney I*, 2018 WL 2552266, at *7–8 (holding that the plaintiff failed to adequately plead misrepresentation where the plaintiff relied on general allegations about promotional materials and an unidentified salesperson's statement). Accordingly, Plaintiff has failed to plead his fraud allegations with the requisite specificity under Rule 9(b), which provides another reason, beyond the statute of limitations bar, to grant Defendant's motion for judgment on the pleadings.

Moreover, the salesperson's alleged misrepresentations are quintessential nonactionable puffery. "Vague or highly subjective claims about product superiority amount to non-actionable puffery." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012). As a result, generalized claims about a vehicle's "high performance" or "durability" are non-actionable puffery. *Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (holding that "advertising which merely states in general terms that one product is superior is not actionable"); *see Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 960 (C.D. Cal. 2016) (holding that manufacturer's statement about car's "state of the art engineering" was puffery).

In this case, Plaintiff's allegations are of the same ilk. Plaintiff alleges that a salesperson told Plaintiff that the Ford F-350 engine was "better and improved" and "higher performing," and that unspecified promotional material "advertised the Super Duty F-350 and its engine as high-

quality products." Compl. ¶¶ 53, 56. Those statements are precisely the sort of "vague or highly subjective claims about product superiority" that are not actionable. Therefore, Plaintiff's failure to plead actionable representations provides another reason to grant judgment on the pleadings on Plaintiff's fraud claims.

Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for judgment on the pleadings with leave to amend. Should Plaintiff elect to file an amended complaint, Plaintiff shall do so within thirty days of this Order. Failure to meet this 30-day deadline will result in dismissal of the challenged claims with prejudice. Failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the challenged claims. Failure to cure deficiencies identified in Defendant's motion for judgment on the pleadings may result in dismissal with prejudice of the challenged claims. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: July 19, 2019

_____
LUCY H. KOH
United States District Judge