**KNIGHT LAW GROUP LLP**
Steve Mikhov (SBN 224676)
stevemusfc@knightlaw.com
10250 Constellation Blvd, Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
WAYNE W. YETTER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE W. YETTER,<br><br>        Plaintiff,<br><br>        v.<br><br>FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 5:19-cv-00877-LHK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**FRCP RULE 12(c)**<br><br>Date:           December 12, 2019<br>Time:           1:30 p.m.<br>Courtroom:   8, 4th Floor<br>                   Honorable Lucy H. Koh |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................ 1

II.    LEGAL STANDARD ...................................................................................................... 1

III.   ARGUMENT .................................................................................................................. 2

    A.     Plaintiff's Claims Are Not Time-Barred .............................................................. 2

        1.     The FAC Pleads Sufficient Facts to Establish Delayed Discovery to Toll Plaintiff's Song-Beverly Act Claims ........................................................ 2

        2.     The FAC Pleads Sufficient Facts to Establish Delayed Discovery Applies to Toll Plaintiff's Fraud Claims ................................................................ 6

        3.     The Doctrine of Fraudulent Concealment Applies to Toll All of Plaintiff's Claims ...................................................................................................... 8

        4.     Cross-Jurisdictional *American Pipe* Tolling Applies in California ............ 9

        5.     Equitable Tolling Applies ....................................................................... 12

    B.     Plaintiff Has Sufficiently Pled All of His Fraud Claims with the Requisite Factual Specificity ..................................................................................................... 13

        1.     Plaintiff Has Sufficiently Pled His Misrepresentation Claims ................. 14

        2.     Plaintiff Has Sufficiently Pled His Fraudulent Concealment Claim ........ 18

IV.    IF THE MOTION IS GRANTED THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND THE FAC ................................................................................. 23

V.     CONCLUSION .............................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733 (9th Cir. 2008) ................................................ 1

*American Pipe and Const. Co. v. Utah*, 414 U.S. 538 (1974) ........................................................ 9

*April Enterprises, Inc. v. KTTV* 147 Cal.App.3d 805, 826-827 (1983) ........................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 1

*Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006) .................................................... 3

*Auto Equity Sales, Inc. v. Superior Court*, 57 Cal. 2d 450, 455 (1962) ...................................... 10

*Avalon Painting Co. v. Alert Lumber Co.*, 234 Cal. App. 2d 178 (1965) .................................... 19

*Becker v. McMillin Construction Co.* 226 Cal.App.3d 1493 (1991) ............................................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 1

*Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir. 1982) ............................................... 2

*Boschma v. Home Loan Center, Inc*., 198 Cal. App. 4th 230 (2011) ........................................... 18

*Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017 (9th Cir. 2008) ........................................... 10

*Collier v. City of Pasadena*, 142 Cal.App.3d 917 (1983) ............................................................ 13

*Daniel v. Ford Motor Co.*, 2016 WL 2899026 (E.D. Cal. May 18, 2016) .................................... 6

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ............................................................ 4

*Daniel v. Ford Motor Co*., No. 2:11-02890 WBS EFB,
   2016 WL 2899026 (E.D. Cal. May 18, 2016) ...................................................................... 21, 22

*Daniel v. Ford*, 806 F.3d 1217 (9th Cir. 2015)............................................................................ 20

*Daugherty v. American Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ............................................................................................... 22

*Davis v. Monte*, 81 Cal. App. 164 (1927) .................................................................................... 14

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987)................................................. 23

*De Spirito v. Andrews*, 151 Cal. App. 2d 126 (1957) .................................................................. 19

*Downs v. Department of Water & Power*, 58 Cal.App.4th 1093, 1100 (1997).......................... 13

*Ehrlich v. BMW of N. Am., LLC*, 801 F.Supp. 2d 908 (2010) ..................................................... 4

*El Pollo Loco v. Hashim*, 316 F.3d 1032, 1039-1040 (9th Cir. 2003)......................................... 6

iii

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997).......................................... 14

*Falco v. Nissan North America, Inc.*, No. CV 13–00686 DDP (MANx),

   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013)....................................................................... 4, 5

*Falk v. Children's Hospital of Los Angeles,* 237 Cal.App.4th 1454, 1466-67 (2015) ................. 12

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................................. 6

*Forman v. Chicago Title Ins. Co.,* 32 Cal.App.4th 998, 1004 (1995) ......................................... 13

*Fox v. Ethicon-Endo Surgery, Inc.,* 35 Cal.4th 797, 810 (2005) ...................................................... 6

*Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069 (1998) ........................................................... 14

*Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) .......................................... 1

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*

   896 F.2d 1542 (9th Cir. 1989) ....................................................................................... 2

*Hatfield v. Halifax PLC*, 564 F.3d 1175, 1189-90 (9th Cir. 2009)................................. 10, 11, 13

*Hebrew Academy of San Francisco v. Goldman* 42 Cal. 4th 883, 894 (2007).............................. 6

*Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1112 (1988) ........................................................... 3, 6, 11

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,

   6 Cal. App. 4th 603 (1992) ....................................................................................... 8

*McAdams v. Monier*, 182 Cal. App. 4th 175 (2010)................................................................... 14

*McDonald v. Antelope Valley Community School District*, 45 Cal.4th 88, 100 (2008) ............... 11

*Mirkin v. Wasserman*, 5 Cal. 4th at 1093 (1993) ......................................................................... 8

*Ovando v. County of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008)............................................. 3

*Paduano v. American Honda Motor Co.*, 169 Cal. App. 4th 1453 (2009).................................. 17

*Prudential-LMI Com. Ins. V. Superior Court,* 512 Cal.3d 674, 693 (1990)................................ 13

*Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634 (1996)....................................................... 22

*Rutledge v. Hewlett-Packard Company*, 238 Cal. App. 4th 1164 (2015).................................... 14

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,* 37 Cal. App. 4th 1318,  44 Cal. Rptr. 2d

   305 (1995).................................................................................................................. 10

*Schreidel v. American Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250 (1995) ........................... 3

*Silvio v. Ford Motor Co.,* 109 Cal. App. 4th 1205 (2003)............................................................... 3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS

*Starr v. Baca*, 652 F.3d 1202 (2011) .............................................................................................. 1

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................... 19

*Tarmann v. State Farm Mutual Auto-Mobile Ins. Co.*,

  2 Cal. App. 4th 153 (1991) ....................................................................................................... 17

*Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App 4th 1559 (1996)............................................................ 14

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)................................................................... 2

*Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256 (1964)........................................................... 19, 20

*Warner Construction Corp. v. City of Los Angeles*, 2 Cal. 3d 285 (1970).................................... 22

**Statutes**

Cal. Civ. Code, § 1793.2(d)(2) ....................................................................................................... 3

Cal. Civ. Code, § 1793.22(e) ........................................................................................................... 3

Cal. Comm. Code § 2725, subd. (1) ................................................................................................ 3

Civ. Code § 1791.1, subd. (c) .......................................................................................................... 4

**Other Authorities**

CACI No. 1900 ............................................................................................................................... 14

CACI No. 1901 ............................................................................................................................... 19

James C. Martin, Colin E. Wrably, & Douglas C. Allen, Untolled Limitations, LOS ANGELES

  LAWYER, Oct. 2014, at 37-38 .............................................................................................. 11

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................................................ 2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Ford's Motion for Judgment on the Pleadings ("Ford's Motion") seeks to dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P 12(c), asserting that Plaintiff Wayne W. Yetter ("Plaintiff") failed to sufficiently allege his fraud causes of action for fraudulent inducement-intentional and negligent misrepresentation and concealment and also contends that all of Plaintiff's claims are time-barred. Because the FAC is sufficiently pled to withstand all these defense theories, the motion must be denied.

### II.    LEGAL STANDARD

The standard applied on Fed. R. Civ. P 12(c) motions is essentially the same as applied on Rule 12(b)(6) motions: a court must accept all of the nonmoving party's factual allegations as true and construe them in the light most favorable to the nonmoving party. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008). While a court need not accept the truth of allegations that are merely "labels and conclusions," "formulaic recitations," or "naked assertions," legal conclusions supported by factual allegations "can provide the framework of a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a Rule 12(c) or Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009). Applying the principles set forth in *Twombly* and *Iqbal*, the Ninth Circuit has recognized that, under Rule 8(a), a well-pleaded complaint must contain sufficient allegations "to give fair notice and enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (2011) (noting that non-specific allegations may, in some cases, be sufficient to meet this standard).

Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.

1

1984). In ruling on the motion, a court may not go beyond the pleadings, but can consider items attached to the pleadings, documents sufficiently incorporated by reference, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); *cf. Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982) (discussing Fed. R. Civ. P. 12(b)(6)), *cert. denied,* 467 U.S. 1251 (1984); s*ee also Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

### III.    ARGUMENT

There are several facts that remain in dispute, which are highlighted by Ford's Motion. Contrary to Ford's contentions, Plaintiff has sufficiently pled all of his claims, and when taken as true, the material facts and reasonable inferences support Plaintiff's claims for violations of the Song-Beverly Act, and fraudulent inducement via theories of concealment and misrepresentation. Additionally, Plaintiff's claims have been tolled by the delayed discovery rule, doctrine of fraudulent concealment, the filing of the class action in *Darne v Ford Motor Company*, Case No. 1:13-cv-03594 (Northern District of Illinois filed May 14, 2013)("*Darne*") and the equitable tolling doctrine as a result of *Darne*.

### A.    Plaintiff's Claims Are Not Time-Barred

#### 1.    The FAC Pleads Sufficient Facts to Establish Delayed Discovery to Toll Plaintiff's Song-Beverly Act Claims

Ford argues that the statute of limitations on Plaintiff's Song-Beverly Act claims began to run when tender of delivery was made, and that the delayed discovery rule is inapplicable. Defendant misstates the law. See, *April Enterprises, Inc. v. KTTV* 147 Cal.App.3d 805, 826-827 (1983) (cause of action does not accrue until "plaintiff discovers or should have discovered all facts essential to his cause of action" including "his injury and its [ ] cause"). The cases cited by Defendant involve the Uniform Commercial Code ("**UCC**") in cases where courts have determined that the "future performance" exception of California Commercial Code § 2725(2) does not apply. *See* Mot. 3:17–23 (citing *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 134

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

(2008)). However, Ford has not provided any authority to show that the doctrine of delayed discovery does not apply. The "question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008), (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112(1988). Here, the delayed discovery rule applies to toll Plaintiff's claims.

Plaintiff alleges that the April 30, 2012 repair was the first time Plaintiff could have reasonably been on inquiry notice that the second repair to the engine had been unsuccessful. FAC ¶ 79. Under the Song-Beverly Act, if a manufacturer fails to repair a vehicle within a reasonable number of attempts, it must promptly offer a repurchase or replacement vehicle.  Cal. Civ. Code, § 1793.2(d)(2).  The phrase "a reasonable number of attempts" means that a vehicle was subject to more than one repair attempt. *Silvio v. Ford Motor Co.,*109 Cal. App. 4th 1205 (2003).  Hence, liability may be established by showing that a vehicle has been subject to repair two or more times for a "nonconformity."[1] Thus, April 30, 2012, during the vehicle's third repair to the engine, is the earliest date that Plaintiff could have been on notice that Defendant failed to repair the vehicle within a reasonable number of repair attempts, given that Defendant misrepresented that it had repaired the problems with the engine on the two prior engine repairs. FAC ¶¶62, 64, 65. Plaintiff's claims against Ford were therefore tolled under the delayed discovery rule and the doctrine of fraudulent concealment. FAC ¶¶ 69-83.

Plaintiff's breach of implied warranty claims under the Song-Beverly Act likewise did not accrue until Plaintiff discovered the breach. The limitations period for the implied warranty is four years. Cal. Comm. Code § 2725, subd. (1); *Mexia v. Rinker Boat Co.*, 174 Cal.App.4th 1297, 1306 (2009). A claim for breach of any warranty typically accrues at tender of delivery – unless "the

---

[1] "Nonconformity" means a defect that substantially impairs the use, value, or safety of a vehicle to the buyer.  Cal. Civ. Code, § 1793.22(e). Additionally, "[t]he issue of whether the problems constituted substantial impairment is one for the trier of fact." *Schreidel v. American Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250 (1995).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

warranty extends to future performance of the goods," in which case the "cause of action accrues when the breach is or should have been discovered." Cal. Comm. Code § 2725, subd. (2); *Mexia*, 174 Cal.App.4th at 1306. The duration of the implied warranty is not less than 60 days nor more than 1 year in duration. Civil Code § 1791.1, subd. (c). Thus the implied warranty under the Song-Beverly Act – unlike implied warranties under the UCC or any other state – has an explicit prospective duration, and a claim for its breach accrues only upon discovery. *Mexia*, 174 Cal.App.4th at 1309.

In *Mexia*, the buyer discovered a latent defect in his boat thirteen months after purchase, after the one-year implied warranty period. Recognizing that the law was enacted to provide greater protections to consumers than the UCC, the court found that so long as a latent defect *existed* within the one-year period, its subsequent *discovery* beyond that time did not defeat an implied warranty claim. *Mexia*, 174 Cal.App.4th at 1310. Thus, "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known" during the one-year warranty period. Id. at 1306, emphasis added. The UCC is fundamentally inapposite: its implied warranty has no duration whatsoever. E.g., Comm. Code § 2314. As a result, the UCC's implied warranty can only be breached at sale or tender. *Mexia* has never been overruled and has been followed numerous times. See, *Daniel v. Ford Motor Company*, 806 F.3d 1217, 1222-1223 (9th Cir. 2015) ("[T]here is not convincing evidence that the California Supreme Court would decide the latent defect discovery issue that was presented in *Mexia* differently."); *Ehrlich v. BMW of N. Am., LLC*, 801 F.Supp.2d 908, 924-925 (2010); *Falco v. Nissan North America*, 2013 WL 5575065 at *10 (C.D. Cal., Oct. 10, 2013).

In *Daniel v. Ford*, the Ninth Circuit reversed a district court's decision to grant summary judgment as to a claim for breach of implied warranty. *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015). The Ninth Circuit quoted *Mexia*'s holding, stating "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a *latent* defect within that time period." *Id.* at 1222 (emphasis added) (quoting *Mexia*, 174 Cal. App. 4th at 1297.) Therefore, for *purposes of assessing if there was a timely violation*, "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known" during the

4

implied warranty period. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th at 1306. The court did not decide any other issues, as no other issues were before the court.

In *Ehrlich*, the defendant argued that the implied warranty claim was untimely if it was not filed within five years of the sale of the vehicle, representing the one-year implied warranty period and a four-year statute of limitations. *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d at 922. The plaintiff purchased his vehicle in 2004, and he filed his lawsuit in 2010. *Id.* at 912. The court rejected the defendant's argument, holding that "BMW's argument fails because it ignores the existence of the 4-year/50,000-mile express warranty which is a warranty that 'explicitly extends to future performance of the goods.' *That warranty tolled the statute of limitations until [the plaintiff] reasonably knew that his MINI would not perform as it should.*" *Id.* at 924–25. In *Falco v. Nissan North America*, Nissan argued that "an implied warranty brought more than five years from the date of delivery is time barred." *Falco v. Nissan North America, Inc.*, No. CV 13–00686 DDP (MANx), 2013 WL 5575065, at *10 (C.D. Cal. Oct. 10, 2013). The court found that "[t]his argument fails, however, because under California law, NNA's five year warranty had the effect of tolling the statute of limitations." *Id.* Therefore, *Falco* confirmed the prior holding in *Ehrlich* and held that the express warranty tolled the implied warranty. Despite the fact that the defects and nonconformities were present on the date of sale, Plaintiff's claim are not time-barred.

Here, Defendant's express warranty on Plaintiff's engine extended "for five years after the warranty start date or 100,000 miles, whichever occurs first." FAC ¶ 44. The nature of the defects in the 6.4L Engine, which do not appear immediately, necessitate delayed discovery. Despite the fact that the defects and nonconformities were present on the date of sale, Plaintiff's claims are not barred, because these latent defects were not discovered until years after the sale of the Subject Vehicle, as properly plead by Plaintiff. FAC ¶¶ 69–83. Accordingly, Defendant Ford's contention that Plaintiff's Song-Beverly Act claims are time–barred is incorrect. The discovery rule applies to toll Plaintiff's Song-Beverly Act claims. Further, as will be discussed in section III.A.4 below, Plaintiff's claims were tolled during the entire pendency of the *Darne* class action.

//

//

5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**2.** **The FAC Pleads Sufficient Facts to Establish Delayed Discovery Applies to Toll Plaintiff's Fraud Claims**

The law is well settled that the limitations period for fraud commences on discovery of the facts constituting the fraud. See, *Hebrew Academy of San Francisco v. Goldman* 42 Cal.4th 883, 894 (2007); *April Enterprises, Inc. v. KTTV* 147 Cal.App.3d 805, 826-827 (1983) (cause of action does not accrue until "plaintiff discovers or should have discovered all facts essential to his cause of action" including "his injury and its [ ] cause"); *El Pollo Loco v. Hashim*, 316 F.3d 1032, 1039-1040 (9th Cir. 2003). Accrual of a claim is delayed when "[t]he injury or the act causing the injury, or both, [are] difficult for the plaintiff to detect," and where the defendant was "in a far superior position to comprehend the act and the injury." *April Enterprises* at p. 831.  Whether the plaintiff exercised reasonable diligence is a question for the trier of fact. *Fox v. Ethicon-Endo Surgery, Inc.,* 35 Cal.4th 797, 810 (2005); *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1112 (1988). See, e.g., *Daniel v. Ford Motor Co.*, 2016 WL 2899026 (E.D. Cal. May 18, 2016) (law does "not require prospective customers to search the internet for complaints, they surely do not require them to contact numerous technicians to find out if any of them happen to know of any tire issues or, more importantly, an undisclosed rear suspension defect;" possibility of finding complaints online did not defeat Ford's duty to disclose); *Falk v. Gen. Motors Corp.* 496 F.Supp.2d 1088, 1092 (N.D. Cal. 2007) ("[m]any customers would not have performed an Internet search before beginning a car search" and they were not required to do so).

Here, Plaintiff sufficiently alleges in his FAC the facts regarding Plaintiff's actual discovery of his claims. In fact, Plaintiff alleges the *precise time* and *manner* of discovery. Plaintiff's truck had several mechanical problems during the warranty period. FAC ¶¶ 14, 59–67, 78, 89.  Plaintiff was told on each repair visit to Ford's authorized dealership that the problem was repaired and what had been done to repair it.  FAC ¶¶ 59–68.  Plaintiff did not have actual notice of the facts giving rise to his claims until on or around January 25, 2016, after the warranty had expired and the engine in Plaintiff's vehicle required yet *another* repair for similar problems, requiring a replacement of the radiator, EGR cooler hoses, and thermostat, and a reprogramming of the PCM. FAC ¶¶ 67, 78. This was the second time that the Subject Vehicle required replacement of EGR cooling hoses and

6

radiator components. See FAC ¶¶ 62, 67. This first out of warranty repair is when Plaintiff was put on actual notice that Ford's previous repairs had failed to conform the Subject Vehicle to its express warranties during the warranty period and that the problems were not limited to his individual vehicle but were part of a widespread issue among Ford Super Duty trucks. FAC ¶ 72.

While Defendant argues that it is not "plausible" that Plaintiff first had actual notice of his claims in January 2016, Defendant ignores the remaining allegations in Plaintiff's FAC. Plaintiff's alleges that on or around April 30, 2012, less than four years after purchase and at only 77,197 miles, Plaintiff delivered the vehicle to an authorized Ford repair facility for its third engine repair. FAC ¶¶65, 79. Plaintiff complained that the "drive to clean exhause" [sic] message would come on after driving for 20 miles. The repair facility technicians replaced the EBP sensor and performed a manual regeneration. *Id*. When the vehicle was returned to Plaintiff, the service technician represented to Plaintiff that the vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician at the authorized Ford repair facility. *Id.* This April 30, 2012 repair was the first time Plaintiff could have reasonably been on inquiry notice that the second repair to the engine had been unsuccessful. Thus, April 30, 2019 is the first time that Plaintiff could have potentially discovered that Ford had misrepresented the characteristics of the vehicle and concealed the known defects. FAC ¶ 79.

Ford also contends that there is no allegation that Plaintiff was diligent. Yet, up until January 2016, Plaintiff presented his vehicle to Ford's authorized repair facilities for various engine related issues and, after said repairs were performed, Ford reassured Plaintiff that the Subject Vehicle was fixed and there were no other problems present. FAC ¶¶58–68. Ford does not address *how* Plaintiff could have been more diligent, inasmuch as Plaintiff is not privy to Ford's internal information and does not allege any expertise in engine operation or repair. In reality, all Plaintiff could have done was present his vehicle to Ford's authorized repair facility upon experiencing a problem, which he did. It is unreasonable and unrealistic for Ford to expect Plaintiff to do anything else, such as perform his own diagnosis to ensure Ford properly inspected, diagnosed, and repaired it. Clearly, Plaintiff has sufficiently alleged the date that Plaintiff was on notice of his claims.

According to the rules expressed in *Sime v. Malouf*, 95 Cal. App. 2d 82 (1949) Plaintiff was

7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

entitled to rely on Ford's representations that the vehicle had been repaired. Plaintiff was not required to investigate Ford's representations regarding the repairs because Ford had superior knowledge regarding its 6.4L Engine. *See Sime*, 95 Cal. App. 2d at 107–08.  Furthermore, no ordinary and reasonable person could be charged with knowledge that Ford was engaging in a scheme to market its defective 6.4L Engine, under the circumstances presented here. Ford concealed and misrepresented the qualities and attributes of the 6.4L Engine and its ability to repair the engine, knowing all the while that the engine was afflicted with irreparable defects. The delayed discovery rule therefore applies to toll each of Plaintiff's claims against Ford.

**3.** **The Doctrine of Fraudulent Concealment Applies to Toll All of Plaintiff's Claims**

The doctrine of fraudulent concealment applies to toll Plaintiff's claims, because Ford and its authorized dealership intentionally concealed a material fact from Plaintiff at the time Plaintiff purchased the Subject Vehicle, and Ford continued to conceal that fact throughout Plaintiff's ownership of the Subject Vehicle, as properly and sufficiently pled.  FAC ¶¶ 13–51, 69–82. Plaintiff has alleged specific facts to meet the elements of fraudulent concealment: (1) Ford concealed or suppressed a material fact (FAC ¶¶ 13–51); (2) Ford had a duty to disclose the fact to Plaintiff (FAC ¶¶ 26, 73–75, 128-164); (3) Ford intentionally concealed or suppressed the fact with intent to defraud Plaintiff (FAC ¶¶ 40–51, 128-138); (4) Plaintiff was unaware of the fact and would not have acted as he did had he known of the concealed or suppressed fact (FAC ¶¶ 24, 33–34, 39, 77–78, 80–82, 128-138); and (5) Plaintiff was damaged as a result of the concealment (FAC ¶¶ 25, 39, 49–50, 78, 128-138). *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–13 (1992); CACI No. 1901.

In order for undisclosed information to be considered material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th at 1093 (1993).  Plaintiff alleges that Ford concealed or suppressed information that his vehicle was equipped with a defective 6.4L Engine, which Ford could not repair under its express warranty. FAC ¶¶ 13–51, 56-68, 110–13.  The specific nature of the defects, including Defendants' inability to repair those defects, was concealed and not disclosed

8

to Plaintiff. FAC ¶¶ 35–51, 56-68.  Plaintiff would not have purchased the Subject Vehicle, or would have paid substantially less for it, had he known about the defects in the 6.4L Engine at the time he purchased it. FAC ¶¶ 25, 39, 49–50, 78, 118.

Ford had a duty to disclose to Plaintiff the information that it knew about the defects in the 6.4L Engine, because it had exclusive knowledge of the irreparable defects in the 6.4L Engine and actively concealed that information from Plaintiff.  FAC ¶¶ 26–51, 73–75, 128-138.  Ford appears to suggest that Plaintiff was at fault because he was unable to somehow learn of the concealed latent defects in the 6.4L Engine sooner. To be sure, Defendant's concealment of the 6.4L Engine's irreparable defects and Defendant's misrepresentations about its ability to repair the Subject Vehicle were specifically calculated to achieve the effect of delaying Plaintiff's *discovery* of the irreparable defects in the 6.4L Engine, for the purpose of reducing warranty expenditures. FAC ¶¶ 46–50, 59–68. As Plaintiff's experience shows, Ford achieved that purpose.  FAC ¶¶ 59–68.

Ford cannot be allowed to impute inquiry notice on Plaintiff as early as the time of purchase. As discussed above, Plaintiff acted with reasonable diligence in attempting to learn about the defects in the Subject Vehicle's engine.  However, these efforts were thwarted by Ford's intentional concealment of information pertaining to the defects and the "Band-Aid" repairs made by Ford's authorized service repair facilities. FAC ¶¶ 46–50, 59–68. Plaintiff simply could not, despite reasonable diligence, have discovered the facts giving rise to his claims sooner.  FAC ¶¶ 78-79. Plaintiff has sufficiently pled allegations in support of his delayed discovery under the discovery rule and the doctrine of fraudulent concealment.  Therefore, the doctrine of fraudulent concealment applies to toll Plaintiff's claims.

### 4.    Cross-Jurisdictional *American Pipe* Tolling Applies in California

It is well-established that a limitations period is tolled while a class action is pending covering the same issues. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974). Plaintiff was a putative class member in *Darne v. Ford Motor Company*, Case No. 1:13-cv-03594 (Northern District of Illinois filed May 14, 2013)("*Darne*"), and allege that this tolled his statutes of limitation for bringing individual claims. Ford contends that the *American Pipe* tolling is not available to California plaintiffs, which is misleading – the Supreme Court has clearly evaluated

9

*American Pipe* tolling with an eye toward applying it, even if it has not yet applied it on the facts of a given case – and ignores binding California appellate authority. Ford simply seeks a different standard than Ford would face in California courts, where Ford regularly loses this argument.

Going against controlling appellate authority, Ford argues that California rejects cross-jurisdictional tolling. Ford relies on the Ninth Circuit ruling in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) in which the court found that the "California Supreme Court has not adopted such-cross jurisdictional tolling." (*Id*. at 1025.) However, the holding in *Clemens* is out of date and not exactly correct: while the California Supreme Court has never <u>applied</u> cross-jurisdictional tolling, it has evaluated it with an eye toward applying it (i.e., when it had the opportunity to directly discuss it, the California Supreme Court did not reject it doctrinally). Moreover, the <u>California Court of Appeal *has* applied it</u>. Although the Ninth Circuit need not follow California appellate decisions, **California Superior Courts must**. See, *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal. 2d 450, 455 (1962), [published decision of the Court of Appeal is binding on all trial courts]. Moreover, the Ninth Circuit later applied equitable tolling cross-jurisdictionally based on a class action filed in federal court in New Jersey. See, *Hatfield v. Halifax PLC*, 564 F.3d 1175, 1189-90 (9th Cir. 2009). The court emphasized the California Supreme Court's "general agreement with tolling in the class action context" and that "California has a strong interest in providing a remedy for wrongs committed against its citizens." *Id*. at 1186-1187; 1190.

Ford ignores the holding and analysis in *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,* 37 Cal. App. 4th 1318,  44 Cal. Rptr. 2d 305 (1995) which both <u>evaluated</u> and <u>applied</u> cross-jurisdictional *American Pipe* tolling and instead relies in an unpublished and non-binding opinion in *Cousyn v. Ford Motor Company*, No. EDCV172051DOCKKX, 2019 WL 3491930, at *1 (C.D. Cal. July 30, 2019) ("*Cousyn*"). In *S.F. Unified Sch. Dist.*, under a heading titled "applicable law" the court analyzed the United States Supreme Court cases concerning class action tolling, namely *American Pipe* and *Crown, Cork & Seal Co. v. Parker* (1983) 462, U.S. 345. See, S.*F. Unified School Dist.*, 37 Cal.App.4th at 1336. The court then discussed the California Supreme Court's decision in *Jolly* not to toll a particular mass-tort prescription drug complaint due to insufficient

10

notice of personal injuries via class action. *Id.* at 1337-38. The court analyzed *Becker v. McMillin Construction Co.* 226 Cal.App.3d 1493 (1991), which applied *American Pipe* tolling in a construction defect case. *Id.* Based on those authorities, *San Francisco Unified* tolled the limitations in a California case based on a class action filed in a Pennsylvania federal court: "a plaintiff who opts out of a federal class action is entitled to have the limitations period tolled during the time when it was a member of the class." *Id.* at 1340; see also, James C. Martin, Colin E. Wrably, & Douglas C. Allen, Untolled Limitations, LOS ANGELES LAWYER, Oct. 2014, at 37-38 (*San Francisco Unified* is the only California case to address *American Pipe* cross-jurisdictional tolling, and accepted it).

Ford also cites *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir.2009), which applied "equitable tolling" cross-jurisdictionally to California state-law claims, while relying on the prior case of *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir.2008) declining to apply California's analogue of American Pipe tolling cross-jurisdictionally) and cases citing *Clemens*. California cases plainly treat *American Pipe* tolling as a form of equitable tolling. See, e.g., *Becker v. McMillin Constr. Co.*, 226 Cal.App.3d 1493, 1501, 277 Cal.Rptr. 491, 496 (4th Dist.1991) (applying *American Pipe* when "the substantive class and individual claims were sufficiently similar to give [defendant] notice of the litigation"); *S.F. Unified Sch. Dist., supra* (permitting tolling under *Jolly*). As such, *American Pipe* tolling is entirely consistent with the California Supreme Court's examples of equitable tolling in *McDonald v. Antelope Valley Community School District*, 45 Cal.4th 88, 100 (2008).

Under California law, then, tolling under *American Pipe* requires that: (1) the class action sufficiently protects the efficiency and economy of litigation; and (2) the class action provides the defendants with sufficient notice of individual claims which may be asserted against them by class members. *See Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1118-1120 (1988). Ford does not dispute whether the *Darne* action protected the efficiency of litigation; it simply argues that Plaintiff's claims are not "exactly the same" as in *Darne,* in that *Darne* did not include claims for breach of

11

implied warranty, fraudulent inducement-concealment and negligent misrepresentation[2]. Mot. 6:3-14.

However, under California law, tolling applies even if the claims are not *identical*, so long as they are substantively similar and involve similar claims, subject matter, and evidence. *Falk v. Children's Hosp. of Los Angeles,* 237 Cal.App.4th 1454, 1466-67 (2015) (defendant simply needs notice of substantive claims as well as generic identities of potential plaintiffs). It is irrelevant that *Darne* did not allege the "exact same causes of action" as Plaintiff here. It is sufficient that there is sufficient notice of substantive claims. To that end, *Darne* alleged that the 6.4L engine is defective in virtually all the same ways Plaintiff alleges, and that it poses an unreasonable safety hazard, all of which was concealed from consumers prior to sale. This provides sufficient notice of Plaintiff's claims.

Finally, the *Darne* class action was filed on May 14, 2013 and was subsequently dismissed on September 1, 2017. Mot., 5:5-6. By the time the class action was filed, only one year and fourteen days had elapsed since April 30, 2012—the earliest date on which Plaintiff could have potentially discovered that Ford had misrepresented the characteristics of the vehicle and concealed the known defects and that Ford had failed to conform the vehicle to warranty after a reasonable number of repair attempts. Thus, under *American-Pipe,* the running of Plaintiff's individual statute of limitations on each of Plaintiff's claims in the present action, which began to run on April 30, 2012, were tolled during the entire pendency of the *Darne* class action. Here, Plaintiff filed his initial complaint on January 17, 2019, a mere one year and four months after the dismissal of the *Darne* class action, thus making his claims timely.

### 5.    Equitable Tolling Applies

Ford argues that Plaintiff is barred from asserting equitable tolling because there is no evidence of him taking "steps" prior to filing the instant action. Equitable tolling under California law suspends or extend a statute of limitations to ensure that claims are not unfairly barred by a

---

[2] Plaintiff's FAC includes claims for (1) breach of express warranty; (2) breach of implied warranty; (3) fraudulent inducement—concealment; (4) fraudulent inducement—intentional misrepresentation; and, (5) fraudulent inducement—negligent misrepresentation.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

limitations period. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009) [citations omitted]; *Collier v. City of Pasadena*, 142 Cal.App.3d 917 (1983). California plainly accepts cross-jurisdictional equitable class action tolling. *Hatfield*, 564 F.3d at 1189-1190 (applying equitable tolling based on class action filed in federal court in New Jersey).

Three factors are considered: (1) timely notice to defendant by filing of a class action claim; (2) absence of prejudice to the defendant in gathering evidence to defend against individual claims; and (3) good faith and reasonable conduct by the plaintiff in filing the individual claim. *Hatfield* at p. 1185. "The timely notice requirement essentially means that the [class action] must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second.' [Citation.] 'The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least **so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second**.' [Citation]." *Downs v. Department of Water & Power*, 58 Cal.App.4th 1093, 1100 (1997).

For the same reasons discussed above, the factual allegations and causes of action in the *Darne* class action were sufficiently similar to place Ford in a position to investigate and defend against Plaintiff's claims here. *See also Forman v. Chicago Title Ins. Co.,* 32 Cal.App.4th 998, 1004 (1995) ("Under equitable tolling, plaintiff… would have been entitled to nearly two years after rejection of his claim to decide whether to file a lawsuit. But, he only used eleven months of that time before bringing suit."); *Prudential-LMI Com. Ins. V. Superior Court,* 512 Cal.3d 674, 693 (1990). There is no requirement in *Hatfield* that a consumer explicitly "rely upon" the class action of which he/she was a putative member.

**B.     Plaintiff Has Sufficiently Pled All of His Fraud Claims with the Requisite Factual Specificity**

Plaintiff has sufficiently pled all of the claims in his FAC with the requisite specificity.  As such, Plaintiff has met the factual pleading requirements to put Defendant on notice of each of his claims and the facts on which those claims are based. Any assertion by the Defendant that Plaintiff's

13

FAC is factually deficient as to Plaintiff's causes of action shows that Defendant is choosing to be willfully ignorant about the allegations contained therein.   Further, several factual disputes remain to be resolved by a trier of fact, thus making Defendant's motion for judgment on the pleadings wholly improper.

### 1.  Plaintiff Has Sufficiently Pled His Misrepresentation Claims

The elements of intentional misrepresentation are: (a) misrepresentation, (FAC ¶¶ 41, 53–54, 56, 140-143) (b) knowledge of falsity (or "scienter") (FAC ¶¶ 13–34, 144); (c) intent to defraud, i.e. to induce reliance (FAC. ¶¶ 24, 33–34, 76, 145); (d) justifiable reliance (FAC ¶¶ 55, 57, 146); and (e) resulting damage (FAC ¶¶ 24–25, 146-148). *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997); CACI No. 1900.  "A misrepresentation need not be oral; it may be implied by conduct." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App 4th 1559, 1567 (1996). "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Id.* Here, Plaintiff specifically alleges the facts constituting each element of Defendant's fraud. FAC ¶¶ 13–34, 40–51, 53–58, 76–77, 128-164.

Moreover, "[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury." *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1081 (1998); *see also Davis v. Monte*, 81 Cal. App. 164, 170 (1927). The "question of whether a manufacturer's representation about a product is specific, and was relied upon by a consumer should be decided by a trier of fact." *Rutledge v. Hewlett-Packard Company*, 238 Cal. App. 4th 1164, 1176 (2015).  Further, a cause of action for misrepresentation may be predicated on an *omission*. *McAdams v. Monier*, 182 Cal. App. 4th 175, 185 (2010).  One "*who gives information of other facts which are likely to mislead for want of communication of that fact*" may be liable for misrepresentation. *Id.* (citation omitted).   Additionally, a "misrepresentation need not be oral; it may be implied by conduct." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th at 1567.

Ford contends in a general manner that Plaintiff's fraud claims are insufficiently pled because Plaintiff has not pled the "who, what, when, where and how" of Ford's alleged misconduct. Mot. 8:1-3. In fact, Plaintiff has sufficiently pled the factual allegations supporting Plaintiff's

14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

misrepresentation claims.  First, Ford argues that the alleged misrepresentations are insufficient to form the basis Plaintiff's misrepresentation causes of action.  On the one hand, Defendant contends that the alleged misrepresentations contained in Ford's marketing materials and by the sales personnel are merely "nonactionable puffery." Ford's arguments lack merit.

Plaintiff sufficiently alleges in his FAC facts about the misrepresentations made by Ford and its authorized dealer, Salinas Valley Ford in Salinas, California; the statements made by Ford in its marketing materials and those made by its authorized dealership personnel are actionable; and Plaintiff has sufficiently pled his misrepresentation claims. Plaintiff's FAC includes details on what those promotional materials were, how Plaintiff received them and specifically when Plaintiff read the materials. Plaintiff alleges that Ford made representations to him through its marketing materials for the 2008 Ford Super Duty F-350 and its authorized agents. FAC ¶¶ 41, 53–56, 139-142. Specifically, Ford's marketing materials for the 2008 Ford Super Duty F-350 promised that the 2008 Ford Super Duty F-350 with the 6.4L Engine had an engine control module that had its durability "increased by two times to insure robustness," that its cooling system was "the industry's most robust cooling system to provide maximum power and torque under extreme operating conditions," with a 50% greater water pump flow rate, and that it offered "Best-in-Class" 5th-wheel and conventional towing, and "Best-in-Class" engine reliability, among other representations. FAC ¶¶ 41, 53–54. Additionally, the marketing materials for Plaintiff's vehicle touted the qualities of the defective 6.4L engine as "the most powerful" diesel engine ever with technology to dampen noise and vibration, and with rods of "outstanding strength and dimensional accuracy for high durability and smooth performance". FAC ¶ 142.

Plaintiff alleges that he received and reviewed the marketing brochure for the Ford 2008 F-350 at the authorized Ford dealership on the day of and prior to the purchase of the vehicle once the brochure for the Ford 2008 F-350 was provided to him by the salesperson. FAC ¶53. Plaintiff received and understood these materials prepared by Ford before Plaintiff decided to purchase the Subject Vehicle.  FAC ¶ 55.  Plaintiff visited Ford's authorized dealership, Salinas Valley Ford in Salinas, California, seeking vehicle to meet his needs. FAC ¶ 56.  Plaintiff was told by the sales personnel at Ford's authorized dealership that the F-350 truck, as equipped with a 6.4L Engine,

15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

would meet all of his criteria, because—according to the salesperson, an authorized agent of Ford—the Super Duty F-350 was better and improved over prior Ford model trucks, which had been equipped with the previous 6.0 Liter PowerStroke Engine.  FAC ¶ 56. Specifically, when asked how the 2008 F-350 would perform in comparison with Plaintiff's prior 1996 Ford truck the salesperson represented that the "2008 F-350 is a better truck with better performance; guaranteed." The salesperson also stated that the 2008 F-350 had superior gas mileage and performance to previous Ford models. FAC ¶ 56. Plaintiff believed and reasonably relied on these verbal and written representations made by the marketing materials and sales personnel when he made his decision to purchase the Subject Vehicle. FAC ¶¶ 55, 57, 127, 136.  Plaintiff would not have purchased the Subject Vehicle had he known the truth about the defects in the engine.  FAC ¶¶ 24–25, 33–34, 39, 58, 147-148.

Most importantly, Defendant did not make any disclosures to Plaintiff to qualify the representations to make them not misleading. Problems with the 6.4L Engine were known by Ford prior to Plaintiff's purchase of the Subject Vehicle. FAC ¶¶ 13–39.  Ford had exclusive knowledge of material facts that it failed to disclose to Plaintiff prior to his purchase of the Subject Vehicle. FAC ¶¶ 26–51, 77, 82.  Plaintiff would not have purchased the truck had he known of the problems with the 6.4L Engine. FAC ¶¶ 24–25, 33–34, 39, 58. Defendant's failure to disclose the known problems rendered its representations misleading and fraudulent.  As a result, Plaintiff was duped into buying a truck that had latent defects in its engine that led to the truck having incessant problems. While Defendant argues that Plaintiff has not shown Ford's representations to be false, Ford's representations about the 6.4L Engine are factual representations that can be objectively verified. The claims made by Ford and Ford's authorized dealer were false, and known to be false, at the time they were made.

To the extent Ford implies that Plaintiff must identify *who* authored or presented the relevant promotional material to the Plaintiff, it is wrongheaded. The material itself constitutes the misrepresentation. Moreover, where the actual person who authored the false documents is not, and cannot, be known to the Plaintiff, they are not required to be identified in the complaint. "The requirement of specificity is relaxed when the allegations indicate that the defendant must

16

necessarily possess full information concerning the facts of the controversy or when the facts lie more in the knowledge of the opposite party." *Tarmann v. State Farm Mutual Auto-Mobile Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991).

The salesperson at Salinas Valley Ford, a Ford authorized dealership in Salinas, California, is identified in the FAC as the person who relayed further misinformation regarding the qualities and capabilities of the F-350 Super Duty, and the 6.4L Engine with which it was equipped, to Plaintiff. FAC ¶¶ 56. His or her name is easily within the knowledge of Ford; it is merely a matter of obtaining the dealership's records. Moreover, the person who authored Ford's promotional advertisements is strictly within the knowledge of Ford. Plaintiff has properly pled considerable and specific facts to apprise Ford of the fraud it committed.

Contrary to Defendant's contentions, Plaintiff's FAC alleges more than "non-actionable puffery" by Ford—instead, it includes detailed misrepresentations by Ford on the specific qualities of the 2008 Ford F-350 and the 6.4L engine. FAC ¶¶ 41, 53–54, 56, 142 . Plaintiff has incorporated by reference in each cause of action all other factual allegations stated elsewhere in the FAC. These allegations incorporated into Plaintiff's fraud-based causes of action contain detailed misrepresentations of facts made by Ford. *Paduano v. American Honda Motor Co.*, 169 Cal. App. 4th 1453 (2009), demonstrates the fallacy of Ford's contention that these statements are "nonactionable puffery." In that case, Honda advertised its Civic Hybrid as having "terrific gas mileage," its Montoney sticker stated a rating of 48 m.p.g. Honda's brochure boasted, "IS THERE ANYTHING SPECIAL I HAVE TO DO? *You just have to love saving money and getting terrific gas mileage*" and "*Just drive the Hybrid like you would a conventional car and save on fuel bills.*" *Id.* at 1472. The true facts were that the Hybrid's fuel economy was no better than 23-30 m.p.g. *Id.* at 1461. In order to achieve the higher gas mileage, the Hybrid had to be driven in "specialized" manner that was for all intents and purposes impossible given modern driving conditions. *Id.* at 1460. The court found that the representation that the Hybrid had "terrific gas mileage" was actionable. *Id.* at 1471–72. Moreover, a reasonable juror could find that the plaintiff had been misled because he drove the vehicle as a conventional car and did not receive "terrific gas mileage," that is, approximately 48 m.p.g. *Id.*

17

Here, similar to the statements in *Paduano*, Ford's statements about the 6.4L Engine are more than nonactionable "puffery": they are provably false, and were shown to be false as a result of the defects in the engine Plaintiff experienced. FAC ¶¶ 41, 53–54, 56, 59–67. Similar to the "terrific gas mileage" claim in *Paduano*, a reasonable juror could find to be false and misleading Ford's claims that the F-350 equipped with a 6.4L Engine has superior towing capacity, "the industry's most robust cooling system to provide maximum power and torque under extreme conditions," and that the F-350 has "Best-in-Class" 5th-wheel towing, conventional towing, and payload and describing the 6.4L engine in Plaintiff's vehicle as the "most powerful" diesel engine ever. FAC ¶¶ 41, 53–54, 56, 142. As Plaintiff discovered, these claims were false and known to be false at the time they were made.

Each of the aforementioned are factual representations concerning the characteristics or standards of quality of the F-350 Super Duty truck and its 6.4L Engine that are reasonably capable of being proved false because objectively the truck either does or does not possess the alleged attributes, characteristics, and standards of quality. As such, the representations made by Ford and its authorized dealer and agent, Salinas Valley Ford, amount to more than mere "non-actionable puffery"; these are actionable misrepresentations. Lastly, Plaintiff's cause of action for negligent misrepresentation is equally supported with all the facts detailed above. It is much the same as the intentional misrepresentation except there is no element of scienter. For the foregoing reasons, Plaintiff's misrepresentation claims are sufficiently pled, and Defendant's Motion should be denied as to these claims.

**2.      Plaintiff Has Sufficiently Pled His Fraudulent Concealment Claim**

A claim for fraud based on concealment requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011). A duty to disclose occurs when any of the following occur: (1) when

18

the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1000–01 (N.D. Cal. 2007); *see also* CACI No. 1901.

Ford's argument that it did not have a duty to disclose material facts about the defective 6.4L Engine fails. Ford initially acknowledges that there are four ways for a duty to disclose to arise, including when the defendant had exclusive knowledge, or when the defendant actively conceals a material fact.  Mot. 11:13–19.  Notably, however, Ford seems only to imply that it was not in a fiduciary relationship with Plaintiff, and it does not address the other three ways that a duty to disclose may arise.  Moreover, Defendant cites and misstates a rule of law quoted in *De Spirito v. Andrews*, 151 Cal. App. 2d 126, 130 (1957), without attempting to establish whether that case is even applicable.  Mot. 11:21–23.  Nevertheless, *De Spirito* is on point.

In *De Spirito*, the court held that the purchasers of a nightclub were entitled to assume that the seller had complied with the law by obtaining the necessary building permits.  *De Spirito v. Andrews*, 151 Cal. App. 2d at 130.  Similar to the purchasers there, here, Plaintiff was entitled to assume Ford, and its authorized agents and dealerships, would not sell vehicles that did not comply with state and federal emissions regulations.  FAC ¶¶ 81, 82; *see De Spirito v. Andrews*, 151 Cal. App. 2d at 131 (affirming judgment for the plaintiff-purchasers in an action to rescind a purchase contract that had been procured by fraudulent misrepresentation and concealment). Just as the seller in *De Spirito* had an obligation to disclose its failure to comply with building codes to the purchasers, Ford had a duty to disclose the true facts about the 6.4L Engine prior to the sale of the Subject Vehicle.  Ford and its authorized agents failed to do so.

Ford also argues that Plaintiff's concealment and misrepresentation claims cannot be based on the conduct of Ford's authorized dealership personnel, and that Ford did not have a duty to disclose information pertaining to the 6.4L Engine defects. Ford cites *Avalon Painting Co. v. Alert Lumber Co.*, 234 Cal. App. 2d 178 (1965) (citing *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256 (1964)), to support its conclusion that no agency relationship exists between Defendant Ford and its

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

authorized dealerships. Ford's reliance on this case is misplaced, and this assertion is contrary to well-established agency law. The case relied upon in the *Avalon* case, *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, does not contain any such holding. In *Vandermark*, the Supreme Court reversed in part a grant of nonsuit in favor of Ford on the grounds that the plaintiff had put forth evidence of a defect present in the car when it was sold to the plaintiff by the defendant dealership. *Vandemark*, 61 Cal. 2d at 261.

The court in *Daniel v. Ford*, 806 F.3d 1217 (9th Cir. 2015), found a nexus connection between Ford and the authorized dealerships, which gave rise to a duty to disclose. In *Daniel*, the plaintiffs alleged that Ford committed fraud in the sale of Ford Focus vehicles by not disclosing an inherent defect known to Ford. *Id*. at 1220–21. Prior to their purchase, the plaintiffs simply spoke to "authorized Ford dealership sales representative about the Focus when they made their purchases." *Id.* On appeal, the court held that a reasonable jury could find that "Ford knew that its customers depended at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged rear suspension defect to consumers if Ford had required it." *Id.* at 1227. Therefore, the court found that "there is a genuine issue of material fact as to whether they in fact relied on Ford's omissions in purchasing the Focus." *Id.* Here, Plaintiff's FAC sufficiently alleges the agency relationship between the Defendant Ford and its authorized dealer, Salinas Valley Ford. FAC ¶¶ 8, 21, 41. In particular, Plaintiff alleges that "Ford trained its dealers throughout the country to specifically tout the supposedly superior attributes of the engine, without ever mentioning its troubled history of design, manufacturing, and reliability defects." FAC ¶ 41. Plaintiff's FAC further alleges that Plaintiff relied on information and marketing brochures provided by Ford and its authorized dealership, Salinas Valley Ford. FAC ¶ 59. Thus, a genuine issue of material fact exists.

Despite Ford's contention to the contrary, the crux of Plaintiff's fraudulent concealment claim is that Ford *did* identify a defect relating to motor vehicle safety, prior to the sale of the vehicle, and did not disclose it to consumers, such as Plaintiff. *See* FAC. ¶¶ 13–51. Plaintiff's FAC alleges that Ford concealed or suppressed the material fact that the Subject Vehicle was equipped with a defective 6.4L Engine that would exhibit ongoing problems. FAC ¶¶ 128-138. Despite Ford's access

20

to abundant analysis and feedback concerning the problematic 6.4L Engine, Ford continued to conceal and suppress the information regarding the defect. *See* FAC ¶¶ 26–51, 69–79. The existence of the engine defect is a material fact that a reasonable consumer, such as Plaintiff, would consider in determining whether to purchase or lease a vehicle. FAC ¶¶ 24, 33–34, 58, 131-138.

Moreover, as discussed, the representations made by Ford in its marketing brochures and its authorized dealership, Salinas Valley Ford, are more than mere "nonactionable puffery": these statements amount to actionable misrepresentation.  Thus, Defendant's argument is without merit, and Ford's Motion as to Plaintiff's cause of action for fraudulent concealment fails as a matter of law. Plaintiff's FAC sufficiently alleges that Ford was aware of widespread problems with the 6.4L Engine prior to the sale to Plaintiff and had a duty to disclose.

Ford had a duty to disclose the concealed facts because Ford had exclusive knowledge of material facts relating to the problems with the 6.4L Engine that it actively concealed from Plaintiff. Ford initially acknowledges that there are four ways for a duty to disclose to arise, *including* when the defendant had exclusive knowledge, or when the defendant actively conceals a material fact. Although Defendant's Motion claims, in a heading, that Ford did not possess exclusive knowledge, Defendant neglects to provide a substantive discussion of this issue in its Motion. *See* Mot. 11:24–12:20.  Thus, to the extent Ford denies it was not in possession of exclusive knowledge of the 6.4L Engine defects, that denial is ineffective. Moreover, Ford does not deny that Ford actively concealed material facts from Plaintiff.  Instead, Defendant merely offers a conclusory statement that there was no fiduciary relationship between Ford and Plaintiff.  Ford had a duty to disclose the concealed facts alleged in Plaintiff's FAC because Ford knew that the internal testing, previous consumer complaints, and other internal information were not readily accessible to Plaintiff.  FAC ¶¶ 26–32, 73–74, 80, 82. Further, Defendant had a duty to disclose the concealed facts about the 6.4L Engine because Defendant actively concealed material facts in order to induce Plaintiff's false belief in the quality, characteristics, and safety of the 6.4L Engine.  FAC ¶¶ 40–51, 75.

In *Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2016 WL 2899026 (E.D. Cal. May 18, 2016), Ford argued that it lacked exclusive knowledge because the plaintiff had been told by technicians that the subject vehicle was known for the defect at issue (premature tire wear), Ford

21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

technicians were informing consumers that such tire wear was a normal characteristic, and that there was widespread knowledge at Ford dealers that the Ford Focus was a tire eater. *Id.* at 4–5. The court found that Ford had superior knowledge for purposes of a duty to disclose because "a prospective purchaser might have learned about the tire problem only if he happened to talk to a technician or Ford dealer who happened to mention it." *Id.* at 5. Further, if the law does "not require prospective customers to search the internet for complaints, they surely do not require them to contact numerous technicians to find out if any of them happen to know of any tire issues or, more importantly, an undisclosed rear suspension defect." *Id.* The court also reiterated the holding in *Toyota Motor Corp* that the ability to find customer complaints on the internet did not defeat Ford's exclusive knowledge for purposes of a duty to disclose. *Id.*

Ford cites to *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 665–66 (1996), where the court noted that *in that particular case* there were two applicable theories for why the defendant was obligated to disclose, including a fiduciary relationship. Mot. 8:16–19. However, the court did not hold that there were no other methods of proving a duty to disclose. *Roddenberry*, 44 Cal. App. 4th at 666. This is even more apparent because the *Roddenberry* court cited to the California Supreme Court's decision in *Warner Construction Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970), which recognized that a duty to disclose may arise when the material facts are known or accessible only to defendant, or if the defendant actively conceals the facts. *Id*. at 294.

Ford also relies on *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834 (2006), for the argument that "[c]oncealment requires that a 'representation was made to which the alleged concealment was contrary." Mot. 9:13–15 (quoting *Daugherty*, 144 Cal. App 4th at 834). However, *Daugherty* held (on the page *after* Ford's citation) that "[i]n short, although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, *or an omission of a fact the defendant was obliged to disclose*." *Id*. at 835 (emphasis added).

Finally, Plaintiff was damaged by Ford's concealment of the 6.4L Engine defect because Plaintiff entered into the sale of a vehicle that Plaintiff would not have otherwise purchased. FAC. ¶¶ 136-137, 147-148. As such, Plaintiff's concealment claim is sufficiently pled, and the Court

22

should deny Ford's Motion.

## IV.   IF THE MOTION IS GRANTED THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND THE FAC

The court has broad discretion to permit a party to amend its pleading. "In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation omitted).  The Ninth Circuit has noted on several occasions that the "Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed].R.Civ.P., by freely granting leave to amend when justice so requires.  Thus 'rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Id*. (citations omitted). The court should grant leave to amend where there is no bad faith, undue delay, or prejudice to the opposing party.

If this Court finds merit in Defendant's Motion, Plaintiff respectfully requests that the Court permit Plaintiff to amend his FAC.  There is no evidence of bad faith or undue delay, and discovery is still open, thus there could be no prejudice to the defendant.

## V.   CONCLUSION

Defendant's Motion must be denied. First, there are several issues of fact that remain to be determined by a jury, and thus a motion for judgment on the pleadings, which requires all factual issues to be resolved, is improper. Second, Plaintiff has pled sufficient facts to sustain all claims alleged in his FAC. Further, Plaintiff's claims are timely because the delayed discovery rule,  the doctrine of fraudulent concealment, the filing of the class action in *Darne v Ford Motor Company*, Case No. 1:13-cv-03594 (Northern District of Illinois filed May 14, 2013) and the equitable tolling doctrine as a result of *Darne* apply to toll Plaintiff's claims.  For the foregoing reasons, Ford's Motion must be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Dated: September 12, 2019                           **KNIGHT LAW GROUP LLP**

                                                    /s/ Steve Mikhov

                                                    Steve Mikhov
                                                    Attorney for Plaintiff,
                                                    WAYNE W. YETTER

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS