UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WAYNE W. YETTER,<br><br>       Plaintiff,<br><br>   v.<br><br>FORD MOTOR COMPANY,<br><br>       Defendant. | Case No. 19-CV-00877-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH PREJUDICE**<br><br>Re: Dkt. No. 38 |

Plaintiff Wayne Yetter ("Plaintiff") brings suit against Defendant Ford Motor Company ("Defendant") for claims arising from Plaintiff's purchase of a vehicle manufactured by Defendant. Before the Court is Defendant's motion for judgment on the pleadings. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion for judgment on the pleadings with prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiff resides in Salinas, California. ECF No. 37 ¶ 2 ("First Amended Complaint" or "FAC"). Defendant Ford is a vehicle manufacturer incorporated in Delaware. *Id.* ¶ 3. On June 30, 2008, Plaintiff purchased a new 2008 Ford Super Duty F-350 truck from Salinas Valley Ford,

an authorized dealer of Defendant's vehicles. *Id.* ¶¶ 9, 56. Plaintiff paid $56,673.20 for the vehicle. ECF No. 37-1 at 2.

Plaintiff alleges that the vehicle that Defendant manufactured and that Plaintiff purchased contains a defective engine. FAC ¶¶ 10, 13. Navistar supplied a 6.4 liter engine for Ford's Super Duty trucks for model year 2008 to 2010. *Id.* ¶ 15. Ford claimed that the 6.4 liter engine "had 'been tested the equivalent of 10 million miles on road and in the lab, helping ensure excellent long-term durability.'" *Id.* Nonetheless, Plaintiff alleges that the 6.4 liter engine ("6.4L Engine") "is plagued by numerous problems and safety concerns." *Id.* ¶ 17. For example, the engine loses power while in operation and is subject to overheating. *Id.* ¶ 19. Other defects "result[] in premature engine failure and require[] expensive repairs, including premature engine replacement." *Id.* ¶ 20.

Plaintiff alleges that Ford alerted automotive technicians about "several defects common to the 6.4L Engine." *Id.* ¶ 29. Ford also issued two different recall notices in March 26, 2007 for Super Duty trucks for other defects not related to the engine, including an "excessive temperature defect" and a "wiring defect." *Id.* ¶ 30. However, Ford has never developed a plan to identify and eliminate "the root cause of defects to the 6.4L Engines," nor has Ford implemented a recall of the engines. *Id.* ¶ 46. Instead, Ford instructed its dealers to undertake repairs that "misled customers to believe that the underlying problem had been fixed, when in fact the symptom likely would reoccur on a later date." *Id.* ¶ 47.

Plaintiff read promotional materials and viewed Ford advertisements that represented that the Super Duty F-350 had "best-in-class rated towing power and engine reliability." *Id.* ¶¶ 53-54. Specifically, at the authorized Ford dealership on the day of Plaintiff's purchase of the vehicle, a salesperson provided Plaintiff with a marketing brochure for the Ford 2008 F-350, which Plaintiff reviewed. *Id.* ¶ 53. The marketing brochure represented that the 6.4L Engine has "[h]igh-pressure common-rail fuel injection hels [sic] [that] deliver 100% of its 650 lb.-ft of torque (80 lb.-ft. more than 2007) at just 2000 rpm." *Id.* ¶ 142(a). The brochure also noted that the 6.4L Engine had "cast-iron block, heads, and bedplate;" a "bigger crankshaft;" "powder-forged connecting rods;"

2

and "oil-jet piston cooling." *Id.* ¶ 142(b)-(e). Plaintiff alleges that "the Vehicle as delivered to Plaintiff had an unreliable, underperforming engine prone to overheating and failure of multiple systems, from the cooling system to the electrical system," but Plaintiff never alleges how any of the representations in the brochure are false. *Id.* ¶ 143.

Additionally, according to Plaintiff, a salesperson at Salinas Valley Ford "verbally represented to Plaintiff that the Super Duty F-350 was better and improved over prior Ford models, and specifically, that the new 6.4L Engine was a newly designed higher performing and better engine than the previous 6.0 Liter PowerStroke Engine." *Id.* ¶ 56. "[W]hen asked how the 2008 F-350 would perform in comparison with Plaintiff's prior 1996 Ford truck[,] the salesperson represented that the '2008 F-350 is a better truck with better performance; guaranteed'" and that "the 2008 F-350 had superior gas mileage and performance to previous Ford models." *Id.*

Plaintiff delivered the vehicle to "an authorized Ford repair facility" for various repairs on multiple occasions, including on January 15, 2009; July 9, 2009; March 4, 2010; December 7, 2010; January 5, 2011; October 3, 2011; April 30, 2012; October 27, 2012; and January 25, 2016. *Id.* ¶¶ 59-67. On each occasion, the technician at the repair facility informed Plaintiff "that the Vehicle had been repaired and was safe to drive." *Id.*

At least four of Plaintiff's repairs concerned the engine. On December 7, 2010, Plaintiff's vehicle received "its first engine repair." *Id.* ¶ 62. Plaintiff complained "that the check engine and wrench light were o[n] and that the vehicle lacked power." *Id.* Again, on October 3, 2011, for the vehicle's "second repair to the engine," "Plaintiff complained that the check engine light was on" and "that the engine had an exhaust leak." *Id.* ¶ 64. On April 30, 2012, for the vehicle's "third engine repair," "Plaintiff complained that the 'drive to clean exhause [sic]' message would come on after driving for 20 miles." *Id.* ¶ 65. On October 27, 2012, for the vehicle's "fourth engine repair," "Plaintiff complained that the vehicle displayed the message 'reduced engine power.'" *Id.* ¶ 66. Based on these allegations, Plaintiff concedes that "[t]he earliest date that a person in Plaintiff's position could have reasonably had notice of his claims would be April 30, 2012." *Id.* ¶ 79.

While Plaintiff still owned the vehicle, a class action was filed on May 14, 2013 against Defendant in the United States District Court for the Northern District of Illinois. *Darne v. Ford Motor Co.*, Case No. 13-cv-03594 (N.D. Ill. May 14, 2013); *see* ECF No. 39, Ex. C ("RJN").[1] The putative nationwide class was initially defined as "[a]ll persons in the United States who purchased or leased Ford trucks with the 6.4-liter Super Duty diesel engine." ECF No. 39, Ex. C at 7. The putative class brought claims for (1) breach of express warranty; (2) breach of implied warranty; (3) breach of state consumer fraud statutes; (4) violations of the Illinois Uniform Deceptive Trade Practices Act; (5) negligence; (6) fraud; (7) unjust enrichment; and (8) exemplary damages. *Id.* at 11-21. Both parties acknowledge that Plaintiff was a putative member of the *Darne* class. On September 1, 2017, the United States District Court for the Northern District of Illinois dismissed the case with prejudice. *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *13 (N.D. Ill. Sept. 1, 2017).

### B. Procedural History

On January 17, 2019, Plaintiff filed a complaint against Defendant in California Superior Court for the County of Monterey. ECF No. 1-3 ("Compl."). Plaintiff's complaint alleged five causes of action: (1) breach of express warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), *id.* ¶¶ 83-97; (2) breach of implied warranty under the Song-Beverly Act, *id.* ¶¶ 98-108; (3) fraudulent concealment, *id.* ¶¶ 109-119; (4) fraudulent inducement – intentional misrepresentation, *id.* ¶¶ 120-129; and (5) fraudulent inducement – negligent misrepresentation, *id.* ¶¶ 130-145. Plaintiff also alleged that "all statute of limitations periods are tolled by the discovery rule and the doctrine of fraudulent concealment." *Id.* ¶ 69.

On January 31, 2019, in state court, Defendant filed an answer to Plaintiff's complaint. ECF No. 1-3, Ex. B. On February 19, 2019, Defendant removed the case to federal court. ECF

---

[1] Defendant asks the Court to take judicial notice of seven publicly filed court documents. ECF No. 39. Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Plaintiff does not oppose this request. Accordingly, the Court grants Defendant's request for judicial notice.

4

No. 1.

After removal, Defendant filed a motion for judgment on the pleadings on March 14, 2019. ECF No. 12. On July 19, 2019, the Court granted Defendant's motion for judgment on the pleadings with leave to amend. ECF No. 34. The Court determined that the Song-Beverly Act express and implied warranty claims were both subject to a four-year statute of limitations. *Id.* at 6. The remaining common law claims for fraud were all subject to a three-year statute of limitations. *Id.* at 6. Therefore, "because Plaintiff purchased his vehicle on June 30, 2008, the statute of limitations on Plaintiff's claims appear to have expired on June 30, 2011 (for Plaintiff's fraud claims) and on June 30, 2012 (for Plaintiff's Song-Beverly Act claims)—several years before Plaintiff filed his lawsuit on January 17, 2019." *Id.*

In response, Plaintiff argued that the claims did not accrue until January 2016, when Plaintiff became aware of an engine defect after visiting a Ford repair facility. The Court concluded otherwise. First, the Court determined that even if the future performance exception applied to Plaintiff's Song-Beverly Act express warranty claim, that claim would only be tolled for five years, the duration of Plaintiff's express warranty. *Id.* at 7-8. As a result, the four-year statute of limitations under the Song-Beverly Act began to run on June 30, 2013 and expired on June 30, 2017, more than a year and a half before Plaintiff filed his complaint. *Id.* at 8.

Next, the Court held that neither the delayed discovery rule nor fraudulent concealment tolling applied to any of Plaintiff's claims because "to merit application of the discovery rule or fraudulent concealment tolling, a plaintiff must allege that he exercised due diligence to uncover his injury." *Id.* (quotation marks omitted). Plaintiff failed to adequately allege that Plaintiff exercised due diligence to uncover his injury and that Plaintiff was unable to discover the engine defect until January 25, 2016 because Plaintiff had repeatedly complained of engine problems and tendered his vehicle to authorized Ford repair facilities on eight different occasions between January 9, 2009 and October 27, 2012. *Id.* at 9. "Plaintiff's allegation that Plaintiff only became aware of the engine defect in January 2016, even though the Ford dealer that Plaintiff visited in January 2016 made the same representation as after all prior repairs 'that the Vehicle had been

repaired and was safe to drive,' [was] implausible." *Id.* at 11. Accordingly, Plaintiff's claims were all time-barred, and the Court granted Defendant's motion for judgment on the pleadings with leave to amend. *Id.* at 12.

The Court noted, however, that "[e]ven though the statute of limitations alone suffice[d] to grant Defendant's motion for judgment on the pleadings on all of Plaintiff's claims, the Court [would address] Defendant's other arguments that Plaintiff's fraud claims [were] inadequate." *Id.* at 12. The Court first rejected Defendant's argument that the economic loss rule barred Plaintiff's fraud claims, but agreed that Plaintiff failed to plead the fraud claims with the specificity that Rule 9(b) requires. *Id.* at 13. Specifically, Plaintiff alleged that he received and read written promotional materials from Ford, but Plaintiff failed to allege what those promotional materials were, how Plaintiff received them, and specifically when Plaintiff read the materials. *Id.* at 14. Additionally, Plaintiff alleged that he viewed television and radio commercials about the Super Duty F-350's features, but did not specify when he viewed those commercials, which specific commercials he saw or heard, and any specific statements Defendant made in those commercials. *Id.* Finally, Plaintiff alleged that a salesperson at Salinas Valley Ford verbally represented to Plaintiff that "'the new 6.4L engine was a newly-designed higher performing and better engine than the previous 6.0 Liter PowerStroke Engine,'" *id.* (quoting Compl. ¶ 56), but Plaintiff did not allege what the salesperson specifically said or the salesperson's identity. *Id.* Accordingly, the Court held that "Plaintiff has failed to plead his fraud allegations with the requisite specificity under Rule 9(b), which provides another reason, beyond the statute of limitations bar, to grant Defendant's motion for judgment on the pleadings." *Id.*

Finally, for good measure, the Court addressed Defendant's puffery arguments. Plaintiff alleged that a salesperson told Plaintiff that the Ford F-350 engine was "better and improved" and "higher performing," and that unspecified promotional material "advertised the Super Duty F-350 and its engine as high-quality products." *Id.* at 14-15. The Court concluded that "[t]hose statements are precisely the sort of 'vague or highly subjective claims about product superiority' that are not actionable." *Id.* at 15. This conclusion provided yet another reason to grant judgment

6

on the pleadings as to Plaintiff's fraud claims. Nonetheless, the Court granted leave to amend on all of Plaintiff's fraud claims.

Following the Court's order granting Defendant's motion for judgment on the pleadings with leave to amend, Plaintiff filed an amended complaint. ECF No. 37 ("FAC"). The FAC alleges the same five causes of action as the Complaint: (1) breach of express warranty under the Song-Beverly Act, *id.* ¶¶ 102-16; (2) breach of implied warranty under the Song-Beverly Act, *id.* ¶¶ 117-27; (3) fraudulent concealment, *id.* ¶¶ 128-38; (4) fraudulent inducement – intentional misrepresentation, *id.* ¶¶ 139-48; and (5) fraudulent inducement – negligent misrepresentation, *id.* ¶¶ 149-64. Similar to the Complaint, the FAC alleges that "all statute of limitations periods are tolled by the discovery rule and the doctrine of fraudulent concealment." *Id.* ¶ 69. The FAC, however, also claims that *Darne v. Ford Motor Co.*, Case No. 13-cv-03594 (N.D. Ill. May 14, 2013)—a class action filed on May 14, 2013 in the United States District Court for the Northern District of Illinois that alleged similar claims against Defendant—tolled the relevant statute of limitations periods because of "the tolling doctrine established in *American Pipe & Construction Co. v. Utah*" and "under California law by the doctrine of equitable tolling." *Id.* ¶¶ 84, 93. Finally, the FAC included additional allegations regarding the statements in the Ford marketing brochure and the statements made by a salesperson at Salinas Valley Ford. *Id.* ¶¶ 53, 56, 142.

## II.  LEGAL STANDARD

### A.  Rule 12(c) Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin*

United States District Court
Northern District of California

*v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**B. Rule 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). The plaintiff must also set

8

forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

### C. Leave to Amend

If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

## III.  DISCUSSION

Defendant contends that the Court should grant judgment on the pleadings on all five of Plaintiff's claims. Defendant argues that all of Plaintiff's claims are time-barred and that Plaintiff's fraud claims fail to meet Rule 9(b)'s heightened pleading standard and that many of the alleged statements constitute non-actionable puffery.

9

Plaintiff offers a number of responses. First, Plaintiff argues that the Song-Beverly express and implied warranty claims are tolled by the future performance exception. Second, Plaintiff again contends that the delayed discovery rule and the fraudulent concealment doctrine tolled the statute of limitations on all his claims. Third, Plaintiff asserts that all of Plaintiff's claims are subject to *American Pipe* tolling. Fourth, Plaintiff argues that California equitable tolling applies to save all of Plaintiff's claims. Finally, Plaintiff asserts that the Amended Complaint fulfills Rule 9(b)'s requirements and that the alleged statements are actionable.

The Court agrees with Defendant that none of Plaintiff's tolling arguments apply to save his claims. Specifically, the future performance exception, the delayed discovery rule, the fraudulent concealment doctrine, *American Pipe* tolling, and California equitable tolling do not save Plaintiff's claims. The Court addresses each of these tolling arguments in turn before addressing Defendant's remaining arguments that Plaintiff's fraud claims fail to state a claim. The Court agrees with Defendant that the FAC fails to state a claim for fraud. Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings with prejudice.

### A. Statute of Limitations

Plaintiff brings two claims under the Song-Beverly Act and three common law claims for fraud. First, Plaintiff's claims under the Song-Beverly Act for violation of express and implied warranty are both subject to a four-year statute of limitations. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 213-15 (1991); *see Philips v. Ford Motor Co.*, 2016 WL 1745948, at *6 (N.D. Cal. May 3, 2016) (explaining that California courts apply to Song-Beverly Act claims the four-year statute of limitations that is also applicable to warranty actions under the California Commercial Code). Second, Plaintiff's fraud claims—specifically, for intentional fraudulent inducement, negligent fraudulent inducement, and fraudulent concealment—are all subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d); *see Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001) ("An action for relief on the grounds of fraud or mistake must be commenced within three years.").

Plaintiff purchased his vehicle on June 30, 2008 and filed this lawsuit about 11 years later

on January 17, 2019.  Accordingly, absent the application of any tolling doctrines, the statutes of limitations on Plaintiff's claims appear to have expired on June 30, 2011 (for Plaintiff's fraud claims) and on June 30, 2012 (for Plaintiff's Song-Beverly Act claims)—approximately 6.5 to 7.5 years before Plaintiff filed suit on January 17, 2019.

### 1. Plaintiff's Song-Beverly Act Express and Implied Warranty Claims Are Not Saved by the Future Performance Exception

First, Plaintiff contends that under the future performance exception, the four-year statute of limitations on Plaintiff's express and implied warranty claims began to run not when Plaintiff purchased his vehicle on June 30, 2008, but rather on April 12, 2012, the date that Plaintiff could have discovered the defective 6.4L Engine.  The Court holds that the future performance exception does not apply to an implied warranty claim and therefore does not save Plaintiff's implied warranty claim.  However, even accepting Plaintiff's argument that the future performance exception applies to both Plaintiff's express warranty claim and implied warranty claim, the four-year statute of limitations began to run on April 12, 2012, and thus expired on April 12, 2016, well before Plaintiff filed suit on January 17, 2019.

Under the Song-Beverly Act, an express warranty claim normally accrues at tender of delivery, with a limited exception for future performance:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1306 (2009) (quoting Cal. Comm. Code § 2725(2)).  The future performance exception "must be narrowly construed." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 130 (2008).  As such, the future performance exception "applies only when the seller has expressly agreed to warrant its product *for a specific and defined period of time*." *Id.* (emphasis in original).

Consequently, the California Court of Appeal has interpreted and applied the future

11

performance exception almost exclusively in the express warranty context. *See id.* at 16-18 (citing cases). To emphasize this point, the *Cardinal Health* court stated that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, courts have consistently held [that] it is not a warranty that explicitly extends to future performance of the goods." *Id.* at 19-20; *see also id.* at 20 (citing cases). "In other words, the future performance exception only applies to the breach of an express warranty. It does not allow the breach of an express warranty to toll the statute of limitations 'to an altogether separate claim,' such as an implied warranty claim." *Philips*, 2016 WL 1745948, at *13 (quoting *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1101 (N.D. Cal. 2014)); *Mangiapane v. Ford Motor Co.*, 2019 WL 5199534, at *3 (N.D. Cal. Oct. 16, 2019) ("Because Plaintiff's cause of action . . . is for breach of an implied warranty, the future performance exception is inapplicable to her claim."). Therefore, the future performance exception does not apply to toll Plaintiff's claim for breach of an implied warranty.

Nevertheless, even accepting Plaintiff's argument that the future performance exception applies to both Plaintiff's implied and express warranty claims, those claims are still not timely. At most, even if the future performance exception applied, Plaintiff's implied and express warranty claims would accrue "when the breach is or should have been discovered." *Mexia*, 174 Cal. App. 4th at 1306 (quoting Cal. Comm. Code § 2725(2)). Plaintiff concedes that he could have discovered the 6.4L Engine defect on April 12, 2012. FAC ¶ 79. Even accepting Plaintiff's date of accrual as April 12, 2012, Plaintiff's implied and express warranty claims would have expired on April 12, 2016, well before Plaintiff filed suit on January 17, 2019. Accordingly, the future performance exception does not save Plaintiff's implied and express warranty claims.

### 2. Neither the Delayed Discovery Rule nor the Fraudulent Concealment Doctrine Applies to Any of Plaintiff's Claims

Second, Plaintiff again contends that under the delayed discovery rule and the fraudulent concealment doctrine, the statute of limitations on all of Plaintiff's claims did not begin to run until January 25, 2016, the date of Plaintiff's last visit to an authorized Ford repair facility to

12

repair the vehicle's engine. Opp. at 6 ("Plaintiff did not have actual notice of the facts giving rise to his claims until on or around January 25, 2016 . . . ."). The Court previously rejected these exact arguments in its earlier order on Defendant's motion for judgment on the pleadings because Plaintiff could have discovered his injury far earlier than January 25, 2016. ECF No. 34 at 8-12. Nothing in the FAC alters this conclusion.

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *WA Southwest2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156 (2015). "A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotation marks and citation omitted). To allege that the discovery rule applies, a plaintiff must allege "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (citation omitted) (emphasis in original). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." *Kline*, 87 Cal. App. 4th at 1374.

Relatedly, Plaintiff contends that the fraudulent concealment doctrine tolled the statute of limitations on his claims until January 25, 2016. Opp. at 8-9. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). "This doctrine requires the plaintiff to (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (citing *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003)). In other words, a plaintiff must allege both the elements of fraud and "an excuse for late discovery of the facts." *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011) (internal quotation marks and citation omitted). Even if there is fraudulent concealment, "the tolling ceases when those facts are,

13

or should have been, discovered by the plaintiff." *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012).

Accordingly, to merit application of the discovery rule or fraudulent concealment tolling, a plaintiff must allege that he exercised due diligence to uncover his injury. *See Allen*, 96 F. Supp. 3d at 1071 (applying the "same reasoning" to whether the plaintiff exercised the due diligence required to apply either the discovery rule or fraudulent concealment tolling).

Defendant contends that Plaintiff has failed to adequately allege that Plaintiff was unable to discover the engine defect until January 25, 2016. The Court agrees. After Plaintiff purchased his vehicle in June 2008, Plaintiff tendered the vehicle to authorized Ford repair facilities on eight different occasions between January 15, 2009 and October 27, 2012. *See* FAC ¶¶ 59-66. At least four of Plaintiff's repairs concerned the engine, the very defect that Plaintiff claims not to have discovered until January 25, 2016. Indeed, Plaintiff conceded that the April 30, 2012 repair "was the first time Plaintiff could have realized that the second repair to the engine had been unsuccessful." *Id.* ¶ 65. Indeed, Plaintiff himself acknowledges that "[t]he earliest date that a person in Plaintiff's position could have reasonably had notice of his claims would be April 30, 2012." *Id.* ¶ 79. Accordingly, it is not plausible that Plaintiff first discovered a defect with his vehicle's engine in January 2016. With any reasonable diligence, Plaintiff should have been aware of a problem by April 30, 2012 at the latest, after his engine had already had multiple unsuccessful repairs.

As the Court previously recognized in its earlier order on Defendant's motion for judgment on the pleadings, "[m]ultiple courts have reached the same conclusions on almost identical allegations, including in another case involving allegations about Ford defects." ECF No. 34 at 10. In *Finney*, the plaintiff, Finney, alleged that although she purchased her Ford Super Duty truck in 2005 and delivered the truck for repairs on several occasions between 2005 and 2010, she first became aware of defects with the truck's engine in March 2015 when her check engine light came on. *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *1 (N.D. Cal. June 4, 2018) ("*Finney I*"). Finney attempted to invoke the discovery rule and fraudulent concealment tolling. *Id.* at *3.

14

As Plaintiff does in this case, Finney argued that she was unable to discover the defect until March 2015 because after each repair visit, technicians told Finney that the car was repaired. *Id.* at *4. The district court rejected Finney's allegations as insufficient: "Finney's allegations are particularly implausible given the absence of an explanation as to why a 2015 engine light revealed the defect, but no prior engine issue—whether during the 2005 to 2010 warranty repair period, or after—revealed the defect." *Id.* The district court gave Finney leave to amend her complaint to rectify the problems with her discovery rule and fraudulent concealment allegations. *Id.* at *9.

After Finney amended her complaint, the district court again concluded that Finney had not plausibly alleged delayed discovery or fraudulent concealment tolling. *Finney v. Ford Motor Co.*, 2019 WL 79033 (N.D. Cal. Jan. 2, 2019) ("*Finney II*"). The district court found insufficient Finney's allegation that the Ford dealership repeatedly told her, after each successive repair, that her truck was fixed:

> If anything, these allegations more starkly illustrate the flaws in Finney's delayed discovery claim: she fails to explain how the illumination of a check-engine light alerted her to the existence of her claims in 2015, while repeated problems with the same engine between four and eight years earlier did not. After four visits to the dealership for repairs in as many years, Finney should have suspected that something was amiss, regardless of representations that the problem was fixed.

*Id.* at *3. As a result, the district court granted Ford's motion for judgment on the pleadings on all claims without leave to amend. *Id.* at *4–5.

Likewise in *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014), the plaintiff Herremans purchased a vehicle in 2008 and brought the vehicle in for multiple repairs to her water pump, the last in January 2013. *Id.* at *1. Herremans argued that the discovery rule and fraudulent concealment tolling applied because she was unaware of the defect until "the car needed repairs a second time." *Id.* at *5. However, the district court held that Herremans' allegations were insufficient because Herremans failed to plead "why, in the exercise of reasonable diligence, she could not have discovered the defect earlier." *Id.*

In this case, Plaintiff fails to allege why only the January 25, 2016 repair, and not any of

15

the eight prior repairs to the vehicle in the four years after Plaintiff purchased the vehicle, put Plaintiff on notice of an engine defect. As in *Finney II*, Plaintiff should have been aware by at least April 2012 that "something was amiss, regardless of representations that the problem was fixed." *Finney II*, 2019 WL 79033, at *3. Plaintiff's argument that Plaintiff only became aware of the engine defect on January 25, 2016—even though the Ford dealer that Plaintiff visited on January 25, 2016 made the same representation as after all eight prior repairs "that the Vehicle had been repaired and was safe to drive"—is implausible. FAC ¶ 67. Indeed, as previously mentioned, Plaintiff himself acknowledges that "[t]he earliest date that a person in Plaintiff's position could have reasonably had notice of his claims would be April 30, 2012." *Id.* ¶ 79. Plaintiff does not allege any facts related to what, if anything, changed in January 2016, eight years after Plaintiff purchased the vehicle, to finally bring the defect to light.

In the FAC, Plaintiff alleges that Defendant kept information about the defect secret from Defendant: "No amount of diligence by Plaintiff could have led to discovery of these facts because they were kept secret by Ford." FAC ¶ 82. But Plaintiff himself contradicts this allegation earlier in the FAC, where Plaintiff alleges that "[t]he earliest date that a person in Plaintiff's position could have reasonably had notice of his claims would be April 30, 2012." *Id.* ¶ 79. Discovery occurs "not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." *Kline*, 87 Cal. App. 4th at 1374. Thus, Plaintiff's claim began to accrue when he suspected or should have suspected that his vehicle suffered from a defect, which occurred at the latest on April 30, 2012.

Accordingly, because Plaintiff has not plausibly alleged reasonable diligence, Plaintiff is not entitled to invoke the discovery rule or the fraudulent concealment doctrine to toll his claims to January 25, 2016. *See Finney I*, 2018 WL 2552266, at *4 (concluding that the plaintiff's failure to exercise reasonable diligence precluded both the discovery rule and fraudulent concealment tolling). At the latest, Plaintiff became aware of the defect on April 30, 2012. *See* FAC ¶¶ 65, 79. The statute of limitations thus expired on April 30, 2015 (for Plaintiff's fraud claims) or April 30, 2016 (for Plaintiff's Song-Beverly Act claims), well before Plaintiff filed his lawsuit on January

16

17, 2019.  Therefore, neither the delayed discovery rule nor the fraudulent concealment doctrine saves Plaintiff's claims.

### 3. American Pipe Tolling Does Not Apply to Toll Any of Plaintiff's Claims

Third, Plaintiff argues that the tolling doctrine established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), applies such that none of Plaintiff's claims are time-barred.  *American Pipe* holds that the pendency of a class action tolls the statute of limitations for putative class members who later bring individual suits when class certification is denied.  Plaintiff contends that *Darne v. Ford Motor Co.*, Case No. 13-cv-03594 (N.D. Ill. May 14, 2013)—a class action filed in the United States District Court for the Northern District of Illinois on May 14, 2013 and dismissed on September 1, 2017 that alleged similar claims against Defendant based on the allegedly defective 6.4L Engine—tolled the applicable statute of limitations periods.  If *American Pipe* tolling applies, Plaintiff's claims are all timely.  As explained more fully below, however, the Court holds that under controlling Ninth Circuit precedent, California has not recognized "cross-jurisdictional" *American Pipe* tolling.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1016 (9th Cir. 2008).  Therefore, *American Pipe* tolling does not apply to Plaintiff's claims.

In *American Pipe*, the United States Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.  "Where class-action status has been denied, . . . members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character."  *China Agritech, Inc. v. Resh*, 138 S. Ct 1800, 1804 (2018) (citing *American Pipe*, 414 U.S. at 544, 552-53).  In subsequent decisions, the United States Supreme Court clarified that "[t]he [*American Pipe*] rule is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, 'prefer to bring an individual suit rather than intervene once the economies of a class action are no longer available.'"  *Id.* (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 353-54 (1983)) (internal alterations

omitted).

The United States Supreme Court justified the new rule on two grounds. First, the high court noted the need to protect "the efficiency and economy of [class action] litigation." *American Pipe*, 414 U.S. at 553. Had the class action not tolled the statute of limitations, putative class members would have been incentivized to file individual actions to preserve their claims. *Id.* at 553-54 ("[A] rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions."). Second, though the United States Supreme Court recognized that defendants should not have to litigate stale claims, the tolling rule would apply only where defendants were on notice "of the substantive claims being brought against them," as well as "the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554-55. As such, "[w]ithin the period set by the statute of limitations, the defendants [would] have the essential information necessary" to be put on notice of the later substantive claims. *Id.* at 555.

Nonetheless, federal law does not control the issue before the Court. "As a federal court sitting in diversity jurisdiction, . . . this Court is bound by state law with respect to the tolling of statute of limitations and the treatment of class action lawsuits." *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1110 (C.D. Cal. 2013), *aff'd*, 647 Fed. App'x 749 (9th Cir. 2016) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)). The parties agree that California law governs this issue and that the determinative question is whether California law recognizes *American Pipe* tolling.

In *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988), the California Supreme Court first addressed whether California law recognized a state-law analogue to *American Pipe* tolling. The *Jolly* plaintiff sued a drug manufacturer and claimed that she had been injured *in utero* by her mother's use of an allegedly defective drug. *Id.* at 1107. Plaintiff asserted that *American Pipe* tolling applied to toll the statute of limitations during the pendency of a class action in which she was a putative class member. *Id.* at 1118. The California Supreme Court disagreed that *American Pipe* tolling applied to the facts of the case.

18

United States District Court
Northern District of California

The California Supreme Court first noted that the relevant class action in *Jolly* "sought only declaratory relief and an order directing defendants to publicize the dangers of [the allegedly defective drug]" for the class. *Id.* at 1120. In other words, the class action suit had not put defendants on notice of the scope of the claims within the class. Additionally, *Jolly* involved personal injury claims, which tended to "vary widely from claim to claim, creating a wide disparity in claimant's damages and issues of defendant liability, proximate cause, liability of skilled intermediaries, comparative fault, informed consent, assumption of the risk and periods of limitation." *Id.* at 1123. The defendants therefore could not have been put "on notice of allegations related to personal injury within the statutory period of limitations so that they might [have] prepare[d] their defense." *Id.* at 1124. These facts stood in contrast to the facts in *American Pipe*, where the defendants had been put on notice of the general nature of claims and injuries of the putative class through the filing of the class action. *Id.* at 1123-25.

Furthermore, the class action complaint in *Jolly* "did not seek personal injury damages on behalf of the class," such that "even those absent class members who were aware of that action could not reasonably have relied on the complaint as a basis for postponing their own personal injury actions." *Id.* at 1125. Therefore, the California Supreme Court noted that its ruling would "not result in the duplicative litigation of the sort feared by the court in *American Pipe*." *Id.*

Based on this reasoning, the California Supreme Court ultimately declined to apply *American Pipe* tolling to a personal-injury mass-tort class action case based on allegedly defective pharmaceuticals. The California Supreme Court, however, left unanswered "the broader question whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality." *Id.* Indeed, the California Supreme Court "left open the possibility of applying the [*American Pipe*] tolling doctrine . . . in which a lack of commonality had been found, if the circumstances so required." *Becker v. McMillin Constr. Co.*, 226 Cal. App. 3d 1493, 1501 (1991).

Since *Jolly*, however, no California Supreme Court decision has directly addressed

19

whether California courts would apply *American Pipe* tolling to facts analogous to the instant case, where Plaintiff relies on the filing of a prior class action in another jurisdiction to toll the statute of limitations for Plaintiff's claims. "The California Supreme Court has not adopted such cross-jurisdictional tolling," and the Ninth Circuit has conclusively held that "the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law. The rule of *American Pipe*—which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008); *see also Hendrix*, 975 F. Supp. 2d 1111 (applying *Clemens* to deny *American Pipe* tolling based on a Tennessee class action). Plaintiff asserts that *Clemens* is "out of date," and California Courts of Appeal have applied *American Pipe* cross-jurisdictional tolling. Opp. at 10. This Court, however, "is bound by the decisions of the Ninth Circuit until a state court of last resort renders a decision clearly irreconcilable with Ninth Circuit precedent." *Vasquez Cruz v. Barr*, 2019 WL 6327576, at *6 (N.D. Cal. Nov. 26, 2019) (citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)).

Accordingly, *Clemens* is directly applicable and controls this case such that under California law, the filing of *Darne* did not toll the statute of limitations periods under *American Pipe*. Therefore, *American Pipe* does not apply and save Plaintiff's claims.

### 4. California Equitable Tolling Does Not Apply to Plaintiff's Claims

Plaintiff's final tolling argument rests upon the California equitable tolling doctrine. Like all of Plaintiff's other tolling arguments, the Court holds that California equitable tolling does not salvage Plaintiff's claims.

According to the Ninth Circuit, California equitable tolling is a distinct doctrine from *American Pipe* tolling. *Hatfield v. Halifax, PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009) ("Although the two types of tolling—equitable and *American Pipe*—overlap to some extent, and even though California courts have treated them at times as interchangeable, they are not congruent."). "*Clemens*, which only rejected the application of *American Pipe* tolling in a cross-jurisdictional

action, does not affect the application of California's equitable tolling doctrine, which covers situations beyond those covered by *American Pipe*." *Id.*

Under California law, "[t]he equitable tolling of statutes of limitations . . . . is designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99 (2008) (quotation marks omitted). Equitable tolling requires a showing of three elements: "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Hatfield*, 564 F.3d at 1185 (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917 (1983)); *see McDonald*, 45 Cal. 4th at 102 ("Concerning our judicially created equitable tolling rule, we clarified that it required a showing of three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (quotation marks omitted)).

Additionally, under an established line of California precedents, a plaintiff invoking equitable tolling "must have actually relied on the use of some other legal mechanism to vindicate his rights." *Hendrix*, 975 F. Supp. at 1115. "[T]he doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald*, 45 Cal. 4th at 100 (quotation marks and internal alterations omitted); *Addison v. State,* 21 Cal.3d 313, 317 (1978) ("[C]ourts have adhered to a general policy which favors relieving plaintiff[s] from the bar of a limitations statute when, possessing several legal remedies[,] he . . . pursues one designed to lessen the extent of his injuries or damage." (citing cases)). "Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *McDonald*, 45 Cal. 4th at 100.

Under Ninth Circuit precedent, however, it is unclear whether a plaintiff invoking equitable tolling must show that he or she previously pursued an alternative legal mechanism. In

United States District Court
Northern District of California

*Hatfield v. Halifax*, a plaintiff filed a class action suit in federal court in California the same day that her substantively identical class action suit in New Jersey court was dismissed. 564 F.3d at 1179-80. The Ninth Circuit held that California equitable tolling applied because the defendants have been given timely notice, the claims in the two suits were substantially similar, and the second action was filed on the same day that the New Jersey court dismissed her case. *Id.* at 1185.

Some courts have interpreted *Hatfield* to be consistent with California precedents requiring a plaintiff to take some prior legal action in order to claim equitable tolling. For example, in a recent case out of the United States District Court for the Central District of California, a district court noted that "in *Hatfield*, the plaintiff had *herself* filed the class action that tolled her California claims." *Cousyn for Cousyn Grading & Demo Inc v. Ford Motor Co.*, 2019 WL 3491930, at *7 (C.D. Cal. July 30, 2019). Defendant makes the same argument here—namely, that "California's equitable tolling doctrine requires prior action by the plaintiff seeking tolling to preserve his or her claims" and that "Plaintiff does not allege that he took any steps prior to his filing the Complaint in January [2019] to preserve his claims against Ford." Mot. at 6.

The Ninth Circuit, however, did not limit its analysis of equitable tolling to the named plaintiff in *Hatfield*. Rather, the Ninth Circuit considered whether the claims of the putative class members who resided in California were tolled by the filing of the New Jersey action, even though the putative class members who resided in California had not taken any actions themselves to preserve their claims. The Ninth Circuit held that "[i]n light of California's endorsement of class actions generally, we see no reason why, in an equitable tolling situation, California would require each individual California resident who is a member of the Hatfield class to file individually and burden the courts with numerous suits." *Id.* at 1189 (citation omitted).

This holding is in tension with California precedents concluding that equitable tolling "applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald*, 45 Cal. 4th at 100 (quotation marks and internal alterations omitted)). This conflict is all the more confounding given that the *Hatfield* court itself recognized that "the usual scenario in which California has applied equitable tolling involves a situation where the

22

plaintiff possesses several legal remedies and reasonably and in good faith pursues one of them to try and prevent further damages." *Hatfield*, 564 F.3d at 1186.

As the Court previously held in the context of *American Pipe* tolling, this Court "is bound by the decisions of the Ninth Circuit until a state court of last resort renders a decision clearly irreconcilable with Ninth Circuit precedent." *Vasquez Cruz*, 2019 WL 6327576, at *6 (citing *Gammie*, 335 F.3d at 893). No California Supreme Court decision has called *Hatfield* into question, and indeed, even one California Court of Appeal has cited *Hatfield* approvingly, though in an unpublished opinion. *See Love v. First Mortg. Corp.*, 2012 WL 314875, at *15 (Cal. Ct. App. Feb. 2, 2012) ("The Ninth Circuit noted California law permits equitable tolling and 'California courts have permitted a plaintiff to take advantage of tolling based on the filing of a prior class action,' even where the plaintiff was only a putative class member in the earlier action." (quoting *Hatfield*, 564 F.3d at 1185) (unpublished opinion, may not be cited in California courts)). Nonetheless, the Court need not decide this issue today because the Court holds that the FAC fails to allege facts that satisfy the three-element test necessary to demonstrate equitable tolling.

Specifically, Plaintiff has not alleged facts demonstrating the third element, "good faith and reasonable conduct by the plaintiff in filing the second claim." *Hatfield*, 564 F.3d at 1185 (citation omitted); *see McDonald*, 45 Cal. 4th at 102 ("Concerning our judicially created equitable tolling rule, we clarified that it required a showing of three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (quotation marks omitted)). "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases," "[b]ut in *Addison v. State of California*, the [California] Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." *McDonald*, 45 Cal. 4th at 102 n.2 (quotation marks omitted). A California Court of Appeal decision, interpreting *Addison*, noted that "if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable." *Collier*, 142 Cal. App. 3d at 926.

Here, Plaintiff concedes that he should have known about the 6.4L Engine defect by April

30, 2012. FAC ¶ 79. The *Darne* class action was filed on May 14, 2013 and dismissed on September 1, 2017. RJN, Exs. C and F. Plaintiff did not file this action until January 17, 2019— more than 16 months after the *Darne* class action was dismissed. Plaintiff provides no justification for his 16-month delay even though this Court previously found that Plaintiff's claims were time-barred, gave Plaintiff leave to amend, and admonished Plaintiff that failure to cure the timeliness deficiency would result in a dismissal of Plaintiff's claims with prejudice.

Courts have generally applied equitable tolling when the delays in filing the second claim were substantially less than 16 months. *See Darnaa, LLC v. Google, Inc.*, 2016 WL 6540452, at *5 (N.D. Cal. Nov. 2, 2016) (collecting cases). Indeed, in *Hatfield*, the second action was filed on the same day that the New Jersey court dismissed the original case. *Hatfield*, 564 F.3d at 1185; *see also Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271, 1274 (9th Cir. 2008) (applying equitable tolling where plaintiffs "promptly" filed in federal court on the same day the state court claims were dismissed).

Additionally, courts have found that delays similar in length to 16 months demonstrated unreasonable conduct, thereby justifying the denial of equitable tolling. *Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.*, 2013 WL 633202, at *7-8 (N.D. Cal. Feb. 20, 2013) (finding no "good faith and reasonable conduct" justifying equitable tolling for 16 month delay); *Easley v. County of El Dorado Prob. Dep't.*, 478 Fed. App'x 447, 447 (9th Cir. 2012) (finding no equitable tolling for a delay of over one year (citing *Ervin v. Cnty. of Los Angeles*, 848 F.2d 1018, 1019-20 (9th Cir. 1988))); *PetersonHouston v. Finet/RPM Mortg. Corp.*, 1997 WL 335129 (N.D. Cal. July 23, 1997) (finding equitable tolling inappropriate after a delay of one year).

As a result, the Court concludes that Plaintiff's delay of 16 months between the dismissal of the *Darne* action and the filing of this action is not reasonable. Furthermore, Plaintiff alleges absolutely no facts justifying this 16-month delay despite previously being given leave to amend to allege facts to show that Plaintiff's claims were not time-barred. Accordingly, California equitable tolling does not apply in the instant case.

Therefore, Plaintiff's claims are all time-barred, and the Court GRANTS Defendant's

24

motion for judgment on the pleadings with prejudice. Denying leave to amend is permissible if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger*, 512 F.3d at 532.

A court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *Carvalho*, 629 F.3d at 892. Indeed, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (quotation marks omitted). This is especially true here, as the Court's prior order put Plaintiff on notice that Plaintiff's claims were time-barred and explained that "[f]ailure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the challenged claims." ECF No. 34 at 15.

Moreover, Plaintiff concedes that "[t]he earliest date that a person in Plaintiff's position could have reasonably had notice of his claims would be April 30, 2012." FAC ¶ 79. Nonetheless, Plaintiff did not file suit until almost seven years later. Indeed, even after the *Darne* class action was dismissed on September 1, 2017, Plaintiff still waited 16 months before filing this action on January 17, 2019. Plaintiff provides no justification for the 16-month delay despite having been given leave to amend to allege that Plaintiff's claims were not time-barred. Plaintiff had all the facts necessary to allege all of its tolling arguments in its original complaint as well as the First Amended Complaint, yet Plaintiff failed to do so. Allowing another serial amendment after a prior opportunity to do so would cause undue delay and "unduly prejudice Defendant by forcing it to defend against stale claims." *Ilaw v. Daughters of Charity Health Sys.*, 2012 WL 381240, at *8 (N.D. Cal. Feb. 6, 2012), *aff'd sub nom. Ilaw v. Daughters of Charity Health Sys., Inc.*, 585 Fed. App'x 572 (9th Cir. 2014).

In light of all these factors, the Court GRANTS Defendant's motion for judgment on the pleadings with prejudice.

**B. Deficiencies in Fraud Claims**

Even though the statute of limitations alone suffices to grant Defendant's motion for judgment on the pleadings on all of Plaintiff's claims, the Court addresses Defendant's other

25

arguments that Plaintiff's fraud claims are inadequate.

Plaintiff brings claims for fraudulent inducement – concealment, fraudulent inducement – intentional misrepresentation, and fraudulent inducement – negligent misrepresentation. FAC ¶¶ 128-64. Plaintiff asserts that three sources of information contained misrepresentations such that Defendant is liable for fraud. Specifically, Plaintiff contends that Defendant is liable for false television and radio commercials, a marketing brochure that supplied misrepresentations, and false statements from a salesperson at Salinas Valley Ford.

Defendant argues that Plaintiff's fraud claims must be dismissed because Plaintiff's allegations fail to meet the specificity that Rule 9(b) requires and the alleged statements constitute non-actionable puffery. The Court agrees with Defendant.

### 1. Plaintiff's Fraud Claims Based on Statements from Television and Radio Commercials Fail to Satisfy Rule 9(b)

To allege a fraud claim based on misrepresentations, as Plaintiff does in this case, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106; *see also Swartz*, 476 F.3d at 764 (claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"). Additionally, a plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998 (internal quotation marks omitted).

In *Kearns v. Ford Motor Co.*, the plaintiff alleged that he was exposed to misrepresentations about Ford vehicles through "(1) Ford's televised national marketing campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales personnel working at the dealership where he bought his vehicle." 567 F.3d at 1126–27. The Ninth Circuit held that these "general pleadings" were insufficient because the plaintiff failed to allege "the particular circumstances surrounding such representations." *Id.* at 1126. In particular, the plaintiff failed to "specify what the television advertisements or other sales material specifically stated" or when he was exposed to them, "which sales material he relied upon," and

United States District Court
Northern District of California

which salesperson made any representations about the vehicles to the plaintiff. *Id.* The Ninth Circuit thus upheld the dismissal of the plaintiff's claims for failure to satisfy Rule 9(b). *Id.* at 1127.

Plaintiff's allegations regarding television and radio commercials remain unchanged from Plaintiff's prior complaint. In the Court's prior order, the Court dismissed Plaintiff's fraud claims predicated on television and radio commercials because Plaintiff "[did] not specify when he viewed those commercials, which specific commercials he saw or heard, and any specific statements Defendant made in those commercials." ECF No. 34 at 14. That same conclusion follows here.

The Court therefore GRANTS Defendant's motion for judgment on the pleadings as to Plaintiff's fraud claims to the extent they are premised on alleged misrepresentations from television and radio commercials. In its prior order, the Court explained that "[f]ailure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the challenged claims." ECF No. 34 at 15. Additionally, Plaintiff already had the opportunity to amend the complaint, and the Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Carasso*, 637 F.3d at 1058. Because Plaintiff has failed to cure the exact deficiencies previously identified in the Court's prior order, the Court finds that amendment would be futile and dismisses these claims with prejudice.

### 2. Plaintiff's Fraud Claims Based on Statements from the Marketing Brochure Fail to Satisfy Rule 9(b)

The Court next addresses Plaintiff's fraud claims based on statements from a Ford marketing brochure. Previously, the Court dismissed Plaintiff's fraud claims based on statements in "written promotional materials prepared by Ford" because Plaintiff "fail[ed] to allege what those promotional materials were, how Plaintiff received them, and specifically when Plaintiff read the materials." ECF No. 34 at 13-14.

Here, Plaintiff alleges that on the day of Plaintiff's purchase of the vehicle at the authorized Ford dealership, a salesperson provided Plaintiff with a marketing brochure for the

27

Ford 2008 F-350 that represented that the 6.4L Engine has "[h]igh-pressure common-rail fuel injection hels [sic] [that] deliver 100% of its 650 lb.-ft of torque (80 lb.-ft. more than 2007) at just 2000 rpm." *Id.* ¶ 142(a). The brochure also noted that the 6.4L Engine had "cast-iron block, heads, and bedplate;" a "bigger crankshaft;" "powder-forged connecting rods;" and "oil-jet piston cooling." *Id.* ¶ 142(b)-(e). Plaintiff alleges that "the Vehicle as delivered to Plaintiff had an unreliable, underperforming engine prone to overheating and failure of multiple systems, from the cooling system to the electrical system," but Plaintiff never alleges how any of the representations in the brochure are false. *Id.* ¶ 143.

Plaintiff does not adequately plead that these statements are false or misleading. To meet Rule 9(b)'s heightened pleading standard, a plaintiff must allege "what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998 (internal quotation marks omitted). Plaintiff merely alleges that "the Vehicle as delivered to Plaintiff had an unreliable, underperforming engine prone to overheating and failure of multiple systems, from the cooling system to the electrical system," but Plaintiff never alleges how any of the representations in the brochure are false. FAC ¶ 143. For example, Plaintiff never pleads that the 6.4L Engine does not actually have "[h]igh-pressure common-rail fuel injection hels [sic] [that] deliver 100% of its 650 lb.-ft of torque (80 lb.-ft. more than 2007) at just 2000 rpm" or that the 6.4L Engine does not actually have cast-iron block, heads, and bedplate; a bigger crankshaft; powder-forged connecting rods; ot oil-jet piston cooling. *Id.* ¶ 142(a)-(e).

Courts have dismissed misrepresentation claims when a plaintiff fails to plead how an alleged misrepresentation is false or misleading. For instance, in *Palmer v. Apple Inc.*, the plaintiff pleaded that he relied on "quantitative statements regarding the iPhone 5's performance or its compatibility with Wi-Fi and cellular networks." 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016). However, the *Palmer* plaintiff did not allege how such quantitative statements regarding the iPhone's performance were false, so the court dismissed the claims. *Id.*

In another case, *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *11 (N.D. Cal. July 25, 2017), the plaintiffs alleged that Apple's statement that iPhones are made with "stainless steel and

United States District Court
Northern District of California

titanium inserts" were false misrepresentations because their iPhones suffered alleged defects. The court determined, however, that the "[p]laintiffs d[id] not allege that the iPhones are *not* made with any of these specific materials" but that these materials "d[id] not sufficiently reinforce the iPhone." *Id.* "[T]hat some iPhones suffered from the touchscreen defect does not demonstrate that Apple made any misrepresentation of fact in stating that the iPhones were made with certain materials and components." *Id.*

Most recently, in *Ahern v. Apple*, the plaintiffs argued that Apple's statement that its products underwent "rigorous testing methods that simulated customers' experiences" were false and misleading. 2019 WL 5102621, at *10 (N.D. Cal. Oct. 11, 2019). The court dismissed those claims because the plaintiffs did not allege that Apple's statement was false or misleading. *Id.* Rather, the plaintiffs simply alleged that the products did not perform up to plaintiffs' expectations. *Id.*

The logic of these cases applies here with equal force, as Plaintiff does not allege that the 6.4L Engine does not have the qualities stated in the marketing brochure. Plaintiff merely alleges that "the Vehicle as delivered to Plaintiff had an unreliable, underperforming engine prone to overheating and failure of multiple systems, from the cooling system to the electrical system." FAC ¶ 143. "[T]hat some [vehicles] suffered from the [alleged] defect does not demonstrate that [Ford] made any misrepresentation of fact in stating that the [engines] were made with certain materials and components." *Davidson*, 2017 WL 3149305, at *11.

Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings as to Plaintiff's fraud claims to the extent they are premised on statements from the Ford marketing brochure. In its prior order, the Court explained that "[f]ailure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the challenged claims." ECF No. 34 at 15. Additionally, Plaintiff already had the opportunity to amend the complaint, and the Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Carasso*, 637 F.3d at 1058. Because Plaintiff has failed to cure the deficiencies previously identified in the Court's prior order, the Court finds that amendment would be futile

and dismisses these claims with prejudice.

### 3. The Alleged Statements from the Salinas Valley Ford Salesperson are Non-Actionable Puffery

Finally, according to Plaintiff, a salesperson at Salinas Valley Ford "verbally represented to Plaintiff that the Super Duty F-350 was better and improved over prior Ford models, and specifically, that the new 6.4L Engine was a newly designed higher performing and better engine than the previous 6.0 Liter PowerStroke Engine." *Id.* ¶ 56. "[W]hen asked how the 2008 F-350 would perform in comparison with Plaintiff's prior 1996 Ford truck[,] the salesperson represented that the '2008 F-350 is a better truck with better performance; guaranteed'" and that "the 2008 F-350 had superior gas mileage and performance to previous Ford models." *Id.*

These statements are quintessential, non-actionable puffery. "A challenged claim is non-actionable 'puffery' if it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) (internal alterations and quotations omitted). An actionable statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.* (quotation omitted). "[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Elias v. Hewlett-Packard co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990)). Whether a statement is puffery or a representation of fact is a question of law that can be properly decided on a motion to dismiss. *Cook*, 911 F.2d at 245.

"Vague or highly subjective claims about product superiority amount to non-actionable puffery." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012). As a result, generalized claims about a vehicle's "high performance" or "durability" are non-actionable puffery. *Cook*, 911 F.2d at 246 (holding that "advertising which merely states in general terms that one product is superior is not actionable"); *see Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 960 (C.D. Cal. 2016) (holding that manufacturer's statement about car's "state of the art

Case No. 19-CV-00877-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH PREJUDICE

engineering" was puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("[G]eneralized and vague statements of product superiority such as 'superb, uncompromising quality'" and "'longer battery life' are . . . all non-actionable puffery."); *Hodges v. Apple Inc.*, 2013 WL 4393545, at *3 (N.D. Cal. Aug. 12, 2013) (concluding that Apple's statement that its product had "the world's most advanced notebook display . . . . is non-actionable puffery because it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely" (internal alterations and quotation omitted)); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (holding that "statements about dependability and superiority," including comments such as "unequaled tradition of quality production" or "unrivaled performance" are "too vague to be actionable"); *Cook*, 911 F.2d 242 (statement that lamps were "far brighter than any lamp ever before offered for home movies" was puffery (citing *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965)).

The Court previously held that these statements constituted puffery because they were "precisely the sort of vague or highly subjective claims about product superiority that are not actionable." ECF No. 34 at 15. Nothing alleged in the FAC changes this conclusion. Statements about a "higher performing and better engine," "better truck with better performance," or "superior gas mileage and performance" (FAC ¶ 56) "are all boasts, all-but-meaningless superlatives."[2] *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003).

In addition, the FAC fails to allege the salesperson's identity, as required by the Court's prior order. ECF No. 34 at 14 ("Plaintiff does not allege what the salesperson specifically said or the salesperson's identity." (citing *Finney I*, 2018 WL 22552266, at *7-8 (holding that the plaintiff failed to adequately plead misrepresentation where the plaintiff relied on general allegations about

---

[2] The Court's conclusion that these statements constitute non-actionable puffery also applies to similar alleged statements in the marketing brochure and television and radio commercials. *See* FAC ¶¶ 53-54 (alleging that Ford promoted the vehicle as "best-in-class").

United States District Court
Northern District of California

promotional materials and an unidentified salesperson's statement))).

Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings as to Plaintiff's fraud claims to the extent they are premised on statements from a Salinas Valley Ford salesperson. In its prior order, the Court explained that "[f]ailure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the challenged claims." ECF No. 34 at 15. Additionally, Plaintiff already had the opportunity to amend the complaint, and the Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Carasso*, 637 F.3d at 1058. Because Plaintiff has failed to cure deficiencies previously identified in the Court's prior order, the Court finds that amendment would be futile and dismisses these claims with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for judgment on the pleadings with prejudice.

**IT IS SO ORDERED.**

Dated: December 20, 2019

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California